**In re Michael J. MICHALSKI and Stephanie L. Michalski, Debtors.**

**No. 10–41401.**

United States Bankruptcy Court, N.D. Ohio.

March 4, 2011.

---

Timothy F. George, Tim George & Associates Co., LPA, Niles, OH, for Debtor.

**MEMORANDUM OPINION REGARDING MOTION OF WELLS FARGO BANK, N.A. TO QUASH SUBPOENA *DUCES TECUM* AND TO RECONSIDER THE ORDER GRANTING MOTION FOR ORAL EXAMINATION AND ISSUANCE OF SUBPOENA *DUCES TECUM* COMPELLING PRODUCTION OF DOCUMENTS**

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on (i) Motion of Wells Fargo Bank, N.A. to Quash Subpoena *Duces Tecum* and to Reconsider the Order Granting Motion for Oral Examination and Issuance of Subpoena *Duces Tecum* Compelling Production of Documents ("Motion"), and (ii) Memorandum in Support of Motion of Wells Fargo Bank, N.A. to Quash Subpoena

*Duces Tecum* and to Reconsider the Order Granting Motion for Oral Examination and Issuance of Subpoena *Duces Tecum* Compelling Production of Documents ("Memo") (collectively, "Motion to Quash") (Doc. # 39) filed by Wells Fargo Bank, N.A. ("Wells Fargo")[1] on January 20, 2011. The Motion to Quash asks this Court to quash a subpoena and to reconsider Order Granting Motion for Oral Examination and Issuance of Subpoena *Duces Tecum* Compelling Production of Documents ("2004 Exam Order") (Doc. # 33) entered by this Court on January 5, 2011. The 2004 Exam Order granted the unopposed Motion for Examination of Wells Fargo Home Mortgage and Order Authorizing Issuance of Subpoena *Duces Tecum* Compelling Production of Documents ("Motion for 2004 Exam") (Doc. # 31) filed by the United States Trustee ("UST") on December 16, 2010. On February 3, 2011, the UST filed Response of the United States Trustee and Supporting Memorandum of Law in Opposition to the Motion of Wells Fargo Bank, N.A. to Quash Subpoena Duces Tecum ("Response") (Doc. # 43).

The Court held a hearing on the Motion to Quash on February 24, 2011 ("Hearing"), at which appeared (i) Scott R. Belhorn, Esq. on behalf of the UST, and (ii) Scott A. King, Esq. on behalf of Wells Fargo. At the Hearing, the Court denied the Motion to Quash, in part, and granted the Motion to Quash, in part. The Court enters this Opinion and Order to formalize that ruling.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (General Order No. 84) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Debtors Michael J. Michalski and Stephanie L. Michalski filed a voluntary petition pursuant to chapter 13 of the Bankruptcy Code on April 21, 2010 ("Petition Date"). On May 25, 2010, Wells Fargo filed Claim No. 4–2[2] ("Proof of Claim"), which asserted a secured claim in the Debtors' residence located at 1339 Cross Drive Southwest, Warren, Ohio 44481 ("Residence") in the amount of $118,372.43. The Proof of Claim included "arrearage and other charges as of time case filed" in the amount of $10,568.05. (Proof of Claim at 1.) No party has objected to the Proof of Claim. On July 26, 2010, Wells Fargo filed Motion of Wells Fargo Bank, N.A. for Relief from Stay (Doc. # 23) with respect to the Residence. On October 28, 2010, the Court entered Agreed Order for Relief from Stay of Wells Fargo Bank, N.A. (Doc. # 29), which granted Wells Fargo conditional relief from the automatic stay.

Following entry of the 2004 Exam Order, on January 7, 2011, the UST filed Subpoena for Rule 2004 Examination ("Subpoena") (Doc. # 34). Attached to the Subpoena was Proof of Service, which indicated Wells Fargo was served with the Subpoena on January 6, 2011. (Subpoena at 2.) The documents to be produced are

---

1. The defined term "Wells Fargo" refers to Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage—an unincorporated division of Wells Fargo Bank, N.A. (*See* Memo at 1 n.1.)

2. Claim No. 4–2 amended Claim No. 4–1—filed on May 14, 2010—to include the electronic signature of counsel for Wells Fargo.

listed on a five-page Exhibit A to the Subpoena, which includes definitions as well as twelve numbered requests for documents. The documents to be produced are:

REQUEST NO. 1: Produce complete copies of any and all communications— including, without limitation, all billing statements, all default or delinquency notices, all communications regarding HAMP or loan modification, and all escrow account disclosure statements— that Wells Fargo issued to the Debtor in the period from September 1, 2009 through December 16, 2010.

REQUEST NO. 2: Produce complete copies of Wells Fargo's policies and procedures applicable to the Michalski Case, for advancing funds held in escrow for accounts deemed in default, including (if applicable) issuance of forced-place insurance and front payment of property taxes, including but not limited to policy memoranda, training materials, manuals, and handbooks.

REQUEST NO. 3: Produce complete copies of the documents Wells Fargo relied on in the filing of its proof of claim in the Michalski Case, including without limitation, complete copies of any and all documents supporting Wells Fargo's chain of title of the mortgage and the promissory note related to the Michalski Account.

REQUEST NO. 4: Produce complete copies of the documents evidencing the loan history of the Michalski Account in the period from September 1, 2009 through December 16, 2010, including complete copies of any and all documents that support escrow advances or disbursements made in the period from September 1, 2009 through December 16, 2010.

REQUEST NO. 5: Produce complete copies of all documents constituting Wells Fargo's records of the Michalski Account for the period between September 1, 2009 and December 16, 2010. Such documents shall include but not be limited to any documents that concern the Michalski Case, including any bankruptcy ledger, promissory note, mortgage, and assignment; any correspondence concerning the Michalski Account (including internal communications and external communications); master payment/loan history; servicing notes; escrow documents; documents concerning fees and costs imposed on the Michalski Account.

REQUEST NO. 6: Produce complete copies of all aspects of any agreements between Wells Fargo and a default servicer (*e.g.*, LPS) associated with the Michalski Case, if any, including without limitation the written terms of compensation.

REQUEST NO. 7: Produce complete copies of Well [sic] Fargo's policies and procedures applicable to the Michalski Account, for advancing funds held in escrow for accounts in default, including (if applicable) issuance of forced-place insurance and front payment of property taxes, including but not limited to policy memoranda, training materials, manuals, and handbooks.[3]

REQUEST NO. 8: Produce complete copies of all aspects of any agreements between Wells Fargo and the entities associated with the Michalski Account, if any, that inspected the real property commonly known as 1339 Cross Drive Southwest, Warren, Ohio 44481, including without limitation the written terms

---

3. The Court notes that Request No. 7 is a duplicate of Request No. 2, except that Request No. 7 excludes the word "deemed" in the phrase "accounts deemed in default."

of compensation and cancelled checks or other receipt of payment.

REQUEST NO. 9: Produce complete copies of all aspects of any agreements between Wells Fargo and the entities associated with the Michalski Account, if any, that engaged in the acts referred to as "Property Preservation" on the proof of claim filed by Wells Fargo in the Michalski Case, including without limitation the written terms of compensation and cancelled checks or other receipt of payment.

REQUEST NO. 10: Produce complete copies of all documents related to or evidencing property inspections or property preservation maintained as business records in the period from September 1, 2009 and December 16, 2010, or were otherwise related to charges reflected on the proof(s) of claim(s) that were filed by Wells Fargo in the Michalski Case, including but not limited to cancelled checks or other proof of payment.

REQUEST NO. 11: Produce complete copies of documents that verify the foreclosure-related costs itemized on the Proof of Claim that Wells Fargo filed in the Michalski Case—*i.e.*, "Foreclosure Title Work," "Foreclosure Filing Costs," "Skip Trace," "Process Service," "Clerk's Costs,"—including without limitation the written terms of compensation, cancelled checks or other proof of payment, and the receipt of monies refunded, if any, by the court with jurisdiction over the foreclosure proceeding.

REQUEST NO. 12: Produce complete copies of Wells Fargo's policies and procedures applicable to the Debtor's Account, for obtaining property inspections or engaging in property preservation, including but not limited to policy memoranda, training materials, manuals, and handbooks.

(*Id.*, Ex. A, at 3–5.)

## II. MOTION TO QUASH

Wells Fargo makes two general objections to the Subpoena, as follows: (i) the UST does not have the authority to conduct the Rule 2004 examination or issue the Subpoena (Memo at 6–10), and (ii) the UST has not established good cause to justify the relief requested in the Motion for 2004 Exam or Subpoena (*id.* at 10–14). If the Court finds that the UST is entitled to conduct a Rule 2004 examination, Wells Fargo requests the Court to restrict the scope of the document requests and reject the UST's request for an in-person Rule 2004 examination. (*Id.* at 15–17.) In particular, Wells Fargo contends that (i) an in-person Rule 2004 examination is not necessary; (ii) the place for an in-person Rule 2004 examination, if permitted, should be at the deponent's place of business; (iii) the scope of the document requests should be limited; and (iv) the production of documents should be limited as provided in Federal Rule of Civil Procedure 45. (*Id.*)

## III. LEGAL ANALYSIS

The first issue the Court will address is Wells Fargo's argument concerning the UST's lack of standing to conduct a Rule 2004 examination. Federal Rule of Bankruptcy Procedure 2004 provides for the examination of any entity by a party in interest. Rule 2004 provides, as follows:

(a) **EXAMINATION ON MOTION.** On motion of any party in interest, the court may order the examination of any entity.

(b) **SCOPE OF EXAMINATION.** The examination of an entity under this rule . . . may relate only to the acts, conduct, or property or to the liabilities and fi-

nancial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge....

(c) **COMPELLING ATTENDANCE AND PRODUCTION OF DOCUMENTS.** The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial....

\* \* \*

FED. R. BANKR.P. 2004 (West 2010).

Wells Fargo cites no case authority for its proposition that the UST "did not have the authority to obtain the relief requested in the Motion [for 2004 Exam] or to issue the Subpoena[.]" (Memo at 6.) Wells Fargo argues: (i) the Rule 2004 examination and document requests in this case are beyond the UST's statutory powers, and (ii) the UST's right to raise issues is restricted by 28 U.S.C. § 586 ("Section 586"). In making these arguments, however, Wells Fargo completely ignores case law directly contrary to its position.

The UST's standing and authorization to conduct Rule 2004 examinations and compel the production of documents were squarely addressed in *In re Countrywide Home Loans, Inc.*, 384 B.R. 373 (Bankr. W.D.Pa.2008). In that case, the bankruptcy court overruled objections made by Countrywide Home Loans, Inc. ("Countrywide"), which were almost identical to the ones raised by Wells Fargo herein. Judge Thomas P. Agresti thoughtfully and thoroughly reviewed—and rejected—Countrywide's argument that the UST's powers were limited to those enumerated in Section 586. Section 586, which contains a non-exhaustive list of particularized UST duties, was enacted pursuant to the 1978

Bankruptcy Act, whereas the broad and generalized authorization for the UST to raise, appear and be heard on any issue, set forth in 11 U.S.C. § 307 ("Section 307"), was created by the 1986 Bankruptcy Act. *Id.* at 381. Applying (i) the principle that the text of a statute should not be read to make part of such statute superfluous or redundant, and (ii) the presumption that when Congress enacts a new statute it considers previous laws and passes the later law in harmony with the policy embodied in the earlier statute, Judge Agresti concluded, "the most natural and plain meaning of Section 307 is that of a grant of expanded power[,]" which was not delimited by Section 586. *Id.* at 384. "The Court thus has no difficulty concluding that the plain meaning of the power to 'raise' and to 'appear and be heard' as to any issue in any bankruptcy case or proceeding includes the ability to conduct examinations pursuant to Rule 2004 in the right circumstances." *Id.* Moreover, after finding that 11 U.S.C. § 1109(b) does not contain an exhaustive list of entities that may be parties in interest, Judge Agresti concluded that the UST was a party in interest because she has been charged to act as a "watchdog" to protect the integrity of the bankruptcy system. *Id.* at 386–87.

This reasoning was expressly adopted by the Bankruptcy Court for the Eastern District of Louisiana in *In re Wilson*, 413 B.R. 330 (Bankr.E.D.La.2009).

Nearly every court considering this issue has determined that § 307 provides the UST with very broad and wide reaching standing. The most comprehensive discussion of the issue can be found in the opinion *In re Countrywide Home Loans, Inc.* In *Countrywide*, the UST filed a Notice of Examination under Fed.R.Bankr.P. 2004 and Service of Subpoena (*Duces Tecum*) in ten bankruptcies. The UST targeted the cases

because she believed Countrywide was not properly administering the debtors' loans. Countrywide objected by filing a motion to quash. The court, in a thorough and well reasoned opinion, determined that the UST had standing to seek and obtain a 2004 examination. The court noted that "[t]he deliberately broad language of Section 307 ensures that the UST has the ability to act in areas where Congress did not specifically foresee and provide an explicit provision for the UST to do so."

\* \* \*

The Court agrees with the UST and finds that provisions of § 586(a) are intended to compliment [sic] the broader grant of power provided by § 307. This Court finds no reason to differ from the vast majority of courts on this issue and specifically adopts the reasoning found in *In re Countrywide Home Loans, Inc.*

*Id.* at 335–36 (footnotes omitted).

This Court also adopts the comprehensive reasoning in *In re Countrywide* and finds that the Motion for 2004 Exam did not exceed the UST's powers under Sections 307 and/or 586.

▮ Furthermore, this Court determines that the UST was authorized to issue the Subpoena. In the present case, the UST seeks to examine records and documentation relating to components of Wells Fargo's Proof of Claim in the Debtors' case. Contrary to Wells Fargo's position that the UST's role is limited to merely administrative functions, examination of the requested records and documentation is an appropriate role for the UST to undertake in his watchdog function in protecting the rights of the public. "The United States trustee, an officer of the Executive branch, represents such a public interest.... As Congress has stated, the U.S. trustees are responsible for 'protecting the public interest and ensuring that

bankruptcy cases are conducted according to law.' " *Morgenstern v. Revco, D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499–500 (6th Cir.1990) (quoting H.Rep. No. 595, 95th Cong. 109, 2d Sess. 404, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6070). Accordingly, this Court rejects Wells Fargo's arguments regarding the UST's lack of authorization and standing to issue the Subpoena.

Wells Fargo relies heavily on the fact that it complied with Federal Rule of Bankruptcy Procedure 3001 in filing its Proof of Claim and that a claim is deemed allowed unless a party in interest objects to the claim. (Memo at 7–8, 10.) Wells Fargo mistakenly construes the Rule 2004 examination as an attempt by the UST to "unilaterally increase the requirements for filing a valid proof of claim." (*Id.* at 10.) Wells Fargo's arguments notwithstanding, nothing about the UST's Motion for 2004 Exam, the Subpoena or this Court's 2004 Exam Order alters the requirements of Rule 3001 or 11 U.S.C. § 502.

Following is the crux of Wells Fargo's argument regarding the UST's lack of authority to conduct the Rule 2004 examination:

Here, the UST seeks to conduct a Rule 2004 examination to determine the validity of the Wells Fargo Claim. The UST is not vested with any statutory authority under 28 U.S.C. § 586 to determine whether a particular claim is valid (or invalid) under state law. Succinctly, Congress did not empower the UST to act as a state attorney general, determining whether creditors are assessing fees beyond those provided by state statute, or asserting claims that are not proper under state law.

(*Id.* at 9.) This argument totally misses the mark. There is no suggestion in the Motion for 2004 Exam, the Subpoena or the

UST's Response that the UST somehow seeks to enforce state law. In almost all cases, the validity of a proof of claim turns, at least in part, on state law. For instance, the validity of a proof of claim that asserts damages based on contract (such as a promissory note) must, of necessity, implicate state law. If the contract is not valid and enforceable, there can be no breach. If the state statute of limitations expired pre-petition, there may be no claim. Thus, the validity of a proof of claim may, indeed, be dependent on state law, but that does not mean that a party seeking information pursuant to Rule 2004 about the amounts and types of claims asserted in a proof of claim is attempting to "act as a state attorney general."

█▌ Wells Fargo further objects to the relief requested in the Motion for 2004 Exam and the Subpoena on the grounds that the UST has not established good cause for the requested relief. First, Wells Fargo asserts that "documents concerning pre-bankruptcy services and events are not relevant." (*Id.* at 12.) This argument fails because the Proof of Claim, by definition, is based on a debt that the Debtors owed to Wells Fargo as of the Petition Date. As a consequence, in order to ascertain what lies behind the amounts set forth in the Proof of Claim, documents concerning pre-bankruptcy services and events are most relevant.

█▌ Next, Wells Fargo contends that because the UST offers no basis to dispute the costs and fees in the Proof of Claim, documents concerning its preparation are not relevant. In making this argument,

Wells Fargo has put the cart before the horse. The UST does not have to articulate a basis to dispute the Proof of Claim before exercising his right to conduct a Rule 2004 examination. A Rule 2004 examination is frequently used as a pre-litigation tool to determine sufficient facts to state a plausible claim for relief and, thus, withstand a motion to dismiss. If, prior to conducting a Rule 2004 examination, the UST (or any party in interest) had to specify the portions of the claim that were in dispute and articulate why such amounts were disputed, Rule 2004 would be rendered meaningless and moot.[4]

Wells Fargo, a creditor of the Debtors, filed the Proof of Claim in the Debtors' case. In the Motion for 2004 Exam, the UST references the Proof of Claim and states that he "seeks to examine Wells Fargo as to the liabilities of the Debtors with respect to Wells Fargo and to determine whether the proof of claim is valid or contains objectionable fees." (Mot. for 2004 Exam at 2–3.) To that end, the Subpoena requests production of documents that can be characterized in two categories: (i) Request Nos. 1, 3,[5] 4, 5, 10 and 11 request documents specific to the Proof of Claim ("Specific Requests"), and (ii) Request Nos. 2, 6, 7, 8, 9 and 12 seek complete copies of certain policies and procedures that may have been utilized as the basis for all or part of the Proof of Claim, or copies of agreements between Wells Fargo and third parties ("Policy Requests").

The Specific Requests each relate to the Proof of Claim filed by Wells Fargo in the

---

4. Once a contested matter or adversary proceeding has been initiated, discovery under Rule 2004 is no longer appropriate. *In re Johnson*, 2007 Bankr.LEXIS 3022, *4 (Bankr. S.D.Ohio 2007) (citing *Moore v. Lang (In re Lang)*, 107 B.R. 130, 132 (Bankr.N.D.Ohio 1989)).

5. To the extent the UST requested documents concerning Wells Fargo's chain of title regarding the Debtors' mortgage and note, this Court understands that the UST now concedes that Wells Fargo originated the mortgage and note and no longer requests such documentation.

Debtors' case. Like certain requests for documents in the *Countrywide* case, these requests are for documents that "relate very precisely to the ... interaction between" Wells Fargo and this Bankruptcy Court in the Debtors' case. *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 397 (Bankr.W.D.Pa.2008). The Specific Requests relate to "the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate," as required by Rule 2004(b). Fed. R. Bankr.P. 2004 (West 2010). Wells Fargo's objection that the Specific Requests exceed the scope of Rule 2004 is without merit.

█] Several of the Policy Requests— Request Nos. 2, 7 and 12—seek production of "complete copies of Wells Fargo's policies and procedures applicable to the [Debtors]" relating to escrow, property inspections and property preservation, including but not limited to "policy memoranda, training materials, manuals, and handbooks." (Subpoena, Ex. A, at 4–5.) These Policy Requests arguably fall within the scope of Rule 2004 because they request policies and procedures applicable to the Debtors' case. Counsel for Wells Fargo stated at the Hearing that Wells Fargo has no policies and procedures that are unique to the Debtors' mortgage and note. As a consequence, because these Policy Requests are, as a practical matter, very broad and encompassing, the UST must meet a higher burden of good cause for the production of these documents. "Inquiries that seek far-reaching information on policies and procedures of general application in the creditor's operation will require a correspondingly higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse. This initial burden on the UST to justify its Rule 2004 examination and the concomitant scope of the exam are

necessarily interrelated concepts." *In re Countrywide*, 384 B.R. at 393; *see also In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D.Ohio 1989) ("While the scope of a Rule 2004 examination is very broad, it is not limitless. The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery.").

As set forth above, in the present case, the UST is appropriately acting in his watchdog capacity in requesting the documents set forth in the Subpoena. However, even recognizing (i) the legitimate watchdog role of the UST, and (ii) that the requested documents fall within the scope of Rule 2004, should the Motion to Quash be granted with respect to the Policy Requests? In other words, has the UST sufficiently demonstrated good cause for the production of Wells Fargo's general policies and procedures?

In the *Countrywide* case, the bankruptcy court recognized that good cause must be determined by looking at the totality of the circumstances rather than applying a mechanical test. Toward that end, that court applied a "sliding scale" or balancing test to determine whether good cause existed for the Rule 2004 examination, finding that such sliding scale "will vary depending on the potential intrusiveness involved." *In re Countrywide*, 384 B.R. at 393. Because the document requests that covered Countrywide's policies and procedures "represent the highest potential for intrusion into the private business affairs of Countrywide, ... a higher level of 'good cause' must be shown before disclosure will be required." *Id.* at 396. Although the *Countrywide* test is useful, that court did not have to determine if the UST had met the higher good cause showing because the UST had either already received or would receive those doc-

uments pursuant to requests made by the debtor and the chapter 13 trustee in a related case.

In the instant case, the UST's stated purpose is to examine Wells Fargo regarding the Debtors' liabilities to Wells Fargo, as set forth in the Proof of Claim, and to ascertain whether Wells Fargo's Proof of Claim contains objectionable fees and/or claims. To the extent Request Nos. 2, 7 and 12 seek production of "complete copies" of all policies and procedures that are applicable to the Debtors' account, this Court finds that the requests are very broad and intrusive because they seek policies and procedures that Wells Fargo utilizes generally in conducting its business. The Court finds that the UST has not stated sufficient cause for Wells Fargo to produce complete copies of the generally applicable policies and procedures requested in these Policy Requests because the Subpoena was issued in support of the Rule 2004 examination relating only to the Debtors. The Court also finds that the UST has not met the standard of good cause for the production of the agreements between Wells Fargo and third parties engaged in default servicing, property inspection and property preservation, as set forth in Request Nos. 6, 8 and 9.[6] As a consequence, the Court will grant the Motion to Quash relating to the Policy Requests, without prejudice to the UST's ability to renew such requests in the future.

█ Without any foundation whatsoever, Wells Fargo argues that an "in person examination is not necessary." (Memo at 15.) Rule 2004(a) specifically contemplates the in-person examination of an "entity." As a consequence, the Court finds that the UST is entitled to conduct an in-person examination of Wells Fargo. Wells Fargo

objects to the place of the deposition and represents that the appropriate place should be Maryland, Iowa or South Carolina. At the Hearing, counsel for Wells Fargo failed to specify the desired location, saying only that the location would depend upon the subject(s) of the examination. As set forth, *infra*, Wells Fargo failed to object to the date and place of the examination, which were specified in the UST's Motion for 2004 Exam. The Motion for 2004 Exam expressly stated, "**THIS TIME AND PLACE MAY BE CHANGED BY MUTUAL AGREEMENT OF THE PARTIES IN ORDER TO EFFECTUATE AN ORDERLY EXAMINATION AND/OR TO COMPLY WITH APPLICABLE RULE.**" (Mot. for 2004 Exam at 2 (emphasis in original).) Indeed, the date and time specified in the Notice of Service of Subpoena *Duces Tecum* on Wells Fargo Bank, N.A., Compelling Production of Documents by January 20, 2011 and Examination on February 8, 2011 (Doc. #36) afforded Wells Fargo with more time to respond than the Motion for 2004 Exam and the 2004 Exam Order. In addition, the UST indicated a willingness to accommodate Wells Fargo by agreeing to a mutually convenient time and place for the examination and production. As a consequence, to the extent this objection is not moot, the Court will overrule it.

Wells Fargo further objects to the Subpoena on the basis that it seeks disclosure of information that is protected by the attorney-client privilege and attorney work-product doctrine. (Memo at 16.) The instructions in Exhibit A to the Subpoena state, "Do not produce any documents or things that are subject to the attorney-client privilege or the attorney

---

**6.** If Wells Fargo possesses proofs of payment to these entities with respect to the Debtors' account, Wells Fargo must produce such proofs of payment.

work-product doctrine. If any documents covered by these requests are withheld under a claim of privilege, furnish a list describing each document for which privilege is claimed, together with the following information[.]" (Subpoena, Ex. A, at 1.) The Court finds that the provisions in the Subpoena for the identification of responsive documents in a privilege log satisfy the concerns set forth in Wells Fargo's objection. Accordingly, the objection on this basis will be overruled. Wells Fargo further argues that the Subpoena seeks private financial information and that the UST "should first be required to comply with 12 U.S.C. § 3401 *et seq.*" (Memo at 17.) Attached to the Subpoena is Certificate of Compliance with the Right to Financial Privacy Act of 1978, executed by Mr. Belhorn. (Subpoena at 26.) Therefore, Wells Fargo's objection on this basis is moot.

Wells Fargo next asserts that the Subpoena "seeks documents in an ambiguous, overbroad manner." (Memo at 17.) Wells Fargo makes no attempt to explain how any of the requests are ambiguous or overly broad. The Court has limited production to the Specific Requests relating to the Debtors' account. Thus, there does not appear to be any substance or merit to this objection. The Court will overrule the objection based on ambiguity and overbreadth.

■ Finally, Wells Fargo requests that the UST reimburse Wells Fargo for its reasonable expenses incurred in responding to the Subpoena. As set forth, *supra,* the UST indicated a willingness to agree to a mutually convenient time and place for the examination and document production. Furthermore, Wells Fargo has proffered no evidence concerning the cost or burden

of responding to the Subpoena. The Court finds that the examination and document requests do not appear unreasonably costly or burdensome. Accordingly, Wells Fargo's request for reimbursement of expenses will be denied.

## IV. RECONSIDERATION OF 2004 EXAM ORDER

This Court did not enter the 2004 Exam Order *ex parte.* Rather, the Court entered the 2004 Exam Order only after considering the UST's *unopposed* Motion for 2004 Exam upon expiration of the fourteen-day objection period. The Motion for 2004 Exam was filed on December 16, 2010, and was accompanied by Notice of Motion and Opportunity to Object ("Notice") (Doc. # 32), which stated, in pertinent part, "If you do not want the Court to grant the motion, or if you want the court to consider your views on the motion, then **on or before December 31, 2010,**[7] you or your attorney must: File with the Court a written request for a hearing along with a written response or an answer explaining your position...." (Notice at 1 (emphasis in original).)

Despite service of the Motion for 2004 Exam and Notice on Wells Fargo and its statutory agent, Wells Fargo failed to file a request for hearing or any other response to the Motion for 2004 Exam. Without having offered any opposition to the Motion for 2004 Exam prior to entry of the 2004 Exam Order, Wells Fargo belatedly now attempts to argue that the 2004 Exam Order should be "reconsidered." Wells Fargo's arguments fail because (i) they were not timely made, and (ii) they lack merit.

---

**7.** The Court notes that the Notice actually provided Wells Fargo with fifteen days to object to the Motion for 2004 Exam.

Wells Fargo states that its request for reconsideration[8] is based on Federal Rule of Civil Procedure 59. (Memo at 2 n.2.)

The decision to alter or amend a judgment under Rule 59(e) is committed to the sound discretion of the district judge. Generally, a Rule 59(e) motion will only be granted on one of the following grounds: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or to prevent manifest injustice. A party seeking reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. The decision to alter or amend a judgment is an extraordinary remedy.

*Waller v. Frost*, 2006 WL 997434, *1, 2006 U.S. Dist. LEXIS 19925, *2–3 (M.D.Ga. 2006) (internal citations and quotation marks omitted). *See also Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982) (internal citations omitted) ("Rule 59(e) may be utilized in timely attempts to vacate judgment. The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, reversible only for abuse.").

The 2004 Exam Order was entered on January 5, 2011. Wells Fargo filed the Motion to Quash on January 20, 2011—fifteen days after entry of the 2004 Exam Order. Federal Rule of Bankruptcy Procedure 9023, which incorporates Rule 59(e) in this proceeding, states, "A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment." FED. R. BANKR.P. 9023 (West 2010). As a result, the request for reconsideration was not timely filed. Nevertheless, the Court will address the request for reconsideration.

In *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237 (11th Cir.1985), the Eleventh Circuit Court of Appeals addressed a situation similar to the facts before this Court and held:

[T]he district court was well within its discretion in denying plaintiff's motion [under Rule 59(e) ] where plaintiff raised the choice of law issue for the first time after the entry of summary judgment.... There is a significant difference between pointing out errors in a court's decision on grounds that have already been urged before the court and raising altogether new arguments on a motion to amend; if accepted, the latter essentially affords a litigant "two bites at the apple."

*Id.* at 1239. Here, Wells Fargo failed to object to entry of the 2004 Exam Order; instead, Wells Fargo now attempts to have this Court "reconsider" its 2004 Exam Order by arguing that the Rule 2004 examination and document requests are beyond

---

**8.** This Court's Memorandum to All Attorneys Practicing in the Youngstown Bankruptcy Court regarding Bankruptcy Court Policies and Procedures, dated December 11, 2009 ("Court Memo"), available on the Court's website, www.ohnb.uscourts.gov, states that motions for reconsideration are extraordinary and should not be made lightly.

Rule 59 does not contain express grounds for amending a judgment, but case law generally requires Rule 59 motions to establish one of the bases explicitly set forth in Rule 60.

Rules 59 and 60 do not provide a "second bite at the apple" or a "do-over." A motion for reconsideration is an extraordinary measure and should be brought to correct a manifest error of law or fact on the part of the Court. It is not a substitute for filing a notice of appeal.

(Court Memo at 5.)

the UST's statutory powers. Wells Fargo is impermissibly attempting to obtain a second bite at the apple.

None of the arguments by Wells Fargo in the Motion to Quash come close to meeting the standard required by Rule 59(e). Instead, Wells Fargo merely attempts to relitigate—or actually litigate for the first time because Wells Fargo wholly failed to respond in any fashion to the Motion for 2004 Exam—the substance of the 2004 Exam Order. This type of conduct is entirely inappropriate and has been soundly rejected. In *Adams v. IBM Corp.*, 2007 WL 14293, 2006 U.S. Dist. LEXIS 94087 (N.D.Ga.2007), the plaintiff asked the court to reconsider, vacate or amend a judgment by raising entirely new arguments in an effort to relitigate the case. The court denied the motion to reconsider and stated:

> Rule 59(e) of the Federal Rules of Civil Procedure authorizes district courts upon motion to alter or amend judgments.... The Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration.... A party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, [or] the need to correct clear error or prevent manifest injustice. Because reconsideration may occur only in these limited circumstances, a party may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind.

*Id.* at *1, 2006 U.S. Dist. LEXIS 94087 at *2–3 (internal citations and quotation marks omitted).

This Court rejects Wells Fargo's belated attempt to raise arguments that it should have and could have raised in a timely filed objection to the Motion for 2004 Exam. None of the issues and/or arguments raised by Wells Fargo even purport to be based on an intervening change in controlling law or newly discovered evidence. Wells Fargo's Motion to Quash is merely an untimely objection. Rather than making a timely objection, Wells Fargo sat on its hands and now improperly attempts to raise its objections more than two weeks after entry of the 2004 Exam Order. Wells Fargo wholly fails to provide any basis, as required by Rule 59(e), for reconsideration or vacation of the 2004 Exam Order. Furthermore, the request for reconsideration was not timely filed pursuant to Rule 9023.

For the foregoing reasons, this Court will deny Wells Fargo's request for reconsideration. Moreover, the reasons Wells Fargo advances for "reconsideration" are largely—if not entirely—duplicative of the objections Wells Fargo raised regarding the Subpoena. As set forth above, this Court has addressed the substance of those objections.

## V. CONCLUSION

For the reasons set forth above, this Court will (i) deny the Motion to Quash with respect to the Specific Requests; (ii) grant the Motion to Quash with respect to the Policy Requests; and (iii) deny Wells Fargo's request for reconsideration of the 2004 Exam Order.

An appropriate Order will follow.

### ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO QUASH

This cause is before the Court on (i) Motion of Wells Fargo Bank, N.A. to Quash Subpoena *Duces Tecum* and to Reconsider the Order Granting Motion for Oral Examination and Issuance of Subpoe-

na *Duces Tecum* Compelling Production of Documents, and (ii) Memorandum in Support of Motion of Wells Fargo Bank, N.A. to Quash Subpoena *Duces Tecum* and to Reconsider the Order Granting Motion for Oral Examination and Issuance of Subpoena *Duces Tecum* Compelling Production of Documents (collectively, "Motion to Quash") (Doc. # 39) filed by Wells Fargo Bank, N.A. ("Wells Fargo")[1] on January 20, 2011. The Motion to Quash asks this Court to quash a subpoena and to reconsider Order Granting Motion for Oral Examination and Issuance of Subpoena *Duces Tecum* Compelling Production of Documents ("2004 Exam Order") (Doc. # 33) entered by this Court on January 5, 2011. The 2004 Exam Order granted the unopposed Motion for Examination of Wells Fargo Home Mortgage and Order Authorizing Issuance of Subpoena *Duces Tecum* Compelling Production of Documents (Doc. # 31) filed by the United States Trustee ("UST") on December 16, 2010. On February 3, 2011, the UST filed Response of the United States Trustee and Supporting Memorandum of Law in Opposition to the Motion of Wells Fargo Bank, N.A. to Quash Subpoena Duces Tecum (Doc. # 43).

The Court held a hearing on the Motion to Quash on February 24, 2011, at which appeared (i) Scott R. Belhorn, Esq. on behalf of the UST, and (ii) Scott A. King, Esq. on behalf of Wells Fargo.

For the reasons set forth in this Court's Memorandum Opinion Regarding Motion of Wells Fargo Bank, N.A. to Quash Subpoena *Duces Tecum* and to Reconsider the Order Granting Motion for Oral Examination and Issuance of Subpoena *Duces Tecum* Compelling Production of Documents ("Memo Opinion") entered on this date, this Court hereby:

(i) Denies the Motion to Quash with respect to the Specific Requests, as defined in the Memo Opinion;

(ii) Grants the Motion to Quash with respect to the Policy Requests, as defined in the Memo Opinion;

(iii) Denies Wells Fargo's request to reconsider the 2004 Exam Order;

(iv) Denies Wells Fargo's request for reimbursement of expenses;

(v) Orders Wells Fargo to produce the documents requested in the Specific Requests within thirty (30) days after entry of this Order; and

(vi) Orders Wells Fargo to produce an officer or representative for examination at a place to be agreed to by the UST and Wells Fargo within sixty (60) days after entry of this Order.

**IT IS SO ORDERED.**

---

1. The defined term "Wells Fargo" refers to Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage—an unincorporated division of Wells Fargo Bank, N.A.