**In re Kimberly L. UNDERWOOD,
Debtor.**

**No. 05–39146.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Sept. 8, 2011.

Charles J. Roedersheimer, Dayton, OH, G. Timothy Dearfield, Dearfield, Kruer & Company, LLC, Kettering, OH, for Debtor.

**DECISION OF THE COURT: 1) GRANTING UNITED STATES TRUSTEE'S REQUEST FOR A 2004 EXAMINATION OF CHASE HOME FINANCE, LLC;**

**-AND-**

**2) LIMITING SCOPE OF EXAMINATION**

LAWRENCE S. WALTER, Bankruptcy Judge.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). This matter is before the Court on the United States Trustee ("UST")'s Motion for Entry of Order Authorizing Examination of and Requiring the Production of Documents by Chase Home Finance, LLC Pursuant to Fed. R. Bankr.P. 2004 and 9016 [Doc. 61]; the Objection of Chase Home Finance to the UST's Motion [Doc. 67]; and the UST's Reply [Doc. 72]. A hearing was held February 15, 2011 at which time the court heard arguments and set a briefing schedule for new matters raised at the hearing. Post-hearing briefs were filed by both parties [Docs. 75–77] and the matter is now ready for determination.

This matter involves the UST's ability to use Fed. R. Bankr.P. 2004 to examine a mortgage creditor, Chase Home Finance, LLC ("Chase"), amidst allegations in the Debtor's adversary complaint that Chase violated court orders by failing to deem the Debtor's mortgage current following her successful completion of a Chapter 13 plan. The general authority of the UST to file a motion for a 2004 exam is not strongly contested. Instead, the dispute focuses on the fact that, following the filing of the UST's motion, the adversary proceeding initiated by the Debtor against Chase was settled and dismissed "with prejudice" leaving the purpose of the UST's request for a 2004 exam less clear and the concerns arguably less compelling. After a careful review of the specific facts presented in this case, including the purpose for the examination, the court is persuaded that the balance weighs in favor of granting the UST's motion but limiting the scope of the examination to matters concerning the specific debtor and the handling of the specific mortgage at issue in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor Kimberly Underwood ("Debtor") successfully completed a Chapter 13 bankruptcy plan that brought her mortgage debt current. Prior to the discharge and closing of the case, the Chapter 13 Trustee filed a motion requesting that the court order Washington Mutual, and its successors and assignees, to adjust its records to reflect that the Debtor's mortgage was current [Doc. 43]. Washington Mutual was the original mortgage creditor but, during the course of the Debtor's bankruptcy, Chase bought most of Washington Mutual's banking operations including the servicing of the Debtor's mortgage.

On November 5, 2009, the court issued the order requiring Washington Mutual to show the mortgage as current on its books as of September of 2009 [Doc. 46]. In January of 2010, the Debtor received her discharge [Doc. 54] and the case was closed.

On August 25, 2010, the Debtor filed a motion to reopen her bankruptcy case in order to file an adversary complaint against Chase [Doc. 57]. The motion was granted [Doc. 58] and the Debtor filed her Complaint on November 9, 2010 [See Adv. Pro. 10–3441, Doc. 1]. In the Complaint, the Debtor asserted that Chase violated the court's orders and the discharge injunction by failing to adjust its real estate mortgage records to reflect that the Debtor's loan was current [*Id.*, ¶¶ 11–13]. The Complaint contains allegations of other transgressions including that Chase continued to report the loan as delinquent even though the Debtor made regular payments, accelerated the debt, and filed a foreclosure action against the Debtor that was dismissed only after Debtor's counsel warned Chase to cease and desist violating the bankruptcy court's order [*Id.*, ¶¶ 14–17].

Based on the issues raised by the Debtor in the Complaint, the UST filed its motion in the reopened bankruptcy case for authority to examine Chase and require the bank to produce documents pursuant to Fed. R. Bankr.P. 2004 and 9016 [Doc. 61]. The purpose behind the UST's motion was stated as follows:

> Questions have arisen in this case regarding Chase Home Finance, LLC's bankruptcy procedures. Specifically, regarding its procedures as they relate to the Order of Court of November 5, 2009, in showing the mortgage account as current, and application/acceptance of payments by the Debtor thereafter. The duties of Chase Home Finance, LLC, extend to ensure the account is properly updated and maintained prior to its taking over the servicing of the account from Washington Mutual. The U.S. Trustee has legitimate concerns regarding the same.
>
> .... These issues directly relate to administration of this bankruptcy estate and the integrity of the bankruptcy system. The U.S. Trustee seeks to ascertain whether the conduct of Chase Home Finance, LLC, and/or its attorney, deviated from the standards established by the bankruptcy code, and/or whether its particular actions threatened an abuse of the bankruptcy system or its procedures.

[Doc. 61, p. 5]. To investigate Chase's alleged misconduct, the UST requested that the court order Chase to turn over documents relating not only to the handling of this specific debtor's mortgage, but also a broader range of policies and procedures including:

> 3. Copies of all documents evidencing, relating or referring to, or concerning any policies or procedures, written or otherwise published, regarding:

a. The protocol for receiving payments made to Chase Home Finance, LLC, by or on behalf of debtors in bankruptcy cases; and

b. The protocol for recording payments that are received by Chase Home Finance, LLC, from or on behalf of debtors in bankruptcy cases; and

c. The protocol for handling and/or internal processing of payments made to Chase Home Finance, LLC, from or on behalf of debtors in bankruptcy cases; and

d. The protocol for accounting and applying payments made to Chase Home Finance, LLC, by or on behalf of debtors in bankruptcy cases.

4. Copies of all documents evidencing, relating or referring to, or concerning any policies or procedures, written or otherwise published, regarding:

a. Transfer of mortgage accounts from a prior mortgage loan servicer generally, and from Washington Mutual specifically, to Chase Home Finance, LLC, including, but not limited to, incorporation of the transactional history from prior servicers into Chase Home Finance, LLC's accounting system.

[Doc. 61, Ex. B]. Chase filed an objection to the motion asserting that the UST's request was overly broad, burdensome and not related to the administration of the bankruptcy case [Doc. 67].

At the February 15, 2011 hearing, the parties presented arguments on their respective positions. The UST noted that concerns over mortgage lenders' handling of bankruptcy matters in general and Chase's procedures in particular were a top priority for the UST's office. The UST considered it a red flag when the Debtor filed an adversary proceeding alleging that a national mortgage servicer was not following a bankruptcy court order to adjust its real estate mortgage records. The UST recognized that the court might limit the scope of the examination to be case specific, but felt that it had good cause for a broader examination in order to prevent future problems in other bankruptcy cases.

Chase argued that the scope of the UST's requested examination was overbroad and, further emphasized the importance of an additional fact: Chase and the Debtor had recently negotiated a settlement of the Debtor's adversary proceeding that would lead to a stipulated dismissal with prejudice and without any admission of wrongdoing by Chase. The Stipulation of Dismissal [Adv. Pro. 10–3441, Doc. 9] was filed on February 15, 2011 and the adversary proceeding was officially closed May 16, 2011. According to Chase's argument, the dismissal of the adversary proceeding with the consent of the Debtor eliminated any current case or controversy in a bankruptcy case that had been fully administered.

### LEGAL ANALYSIS

**A. The UST Establishes Standing and Good Cause for a 2004 Examination**

The UST requests that the court order Chase to produce documents and submit to an oral examination pursuant to Fed. R. Bankr.P. 2004. This rule provides parties in interest to a bankruptcy case broad authority to conduct investigatory examinations of the debtor and other entities in matters related to the debtor, debtor's finances or other matters affecting the debtor's estate, or the debtor's right to a discharge. In pertinent part, this rule states:

**(a) Examination on motion.** On motion of any party in interest, the court may order the examination of any entity.

**(b) Scope of examination.** The examination of an entity under this rule or of

the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge....

**(c) Compelling attendance and production of documents.** The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

Fed. R. Bankr.P. 2004. While Rule 2004 allows the bankruptcy court to order the examination of debtors and creditors, the examiner must meet a threshold standard of "good cause" when the request is directed towards a creditor. *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr.W.D.Penn.2008); *Official Comm. of Unsecured Creditors v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.)*, 169 B.R. 130, 134 (Bankr.S.D.Ohio 1994).

■ Before reaching the issue of whether good cause is established, Chase argues a preliminary issue: whether the court has the authority to order a 2004 examination when, according to Chase, there is no pending "case or controversy." Chase notes that the bankruptcy case had been closed (although currently reopened), the estate fully administered and the adversary proceeding initiated by the Debtor to deal with Chase's alleged misconduct settled and dismissed. Chase emphasizes the settlement of the adversary proceeding to further support that no one has suffered any injury that has not already received recompense. Although the court understands that Chase has some support for this argument, the court concludes that it is ultimately without merit.

■ Chase begins by referring to the Constitution which limits the jurisdiction of federal courts, including bankruptcy courts, to resolution of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Day v. Klingler (In re Klingler)*, 301 B.R. 519, 523 (Bankr.N.D.Ill.2003). In essence, this is an issue of standing. "... courts typically say that 'at an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the [defendant's conduct] and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.'" *In re Attorneys at Law and Debt Relief Agencies*, 353 B.R. 318, 321 (Bankr. S.D.Ga.2006) (citing *Valley Forge*, 454 U.S. at 472, 102 S.Ct. 752).

At first blush, the UST may not appear to have Article III standing because, unlike the Debtor, the UST did not suffer an injury as a result of Chase's alleged failure to properly account for the mortgage. However, the UST is a unique entity within the context of a bankruptcy case charged with the statutory authority to raise issues on behalf of the public interest as the Congressionally appointed "watchdog" of the bankruptcy system. *Walton v. Countrywide Home Loans, Inc.*, 2009 WL 1905035, at *2 (S.D.Fla. June 9, 2009) (citing the House Report to the Bankruptcy Act of 1986 noting that USTs were "given important oversight and watchdog respon-

sibilities to ensure honesty and fairness in the administration of bankruptcy cases . . . ."); *Attorneys at Law*, 353 B.R. at 322 (noting that the power Congress granted to USTs is "undeniably broad").

Indeed, in recent years, a number of bankruptcy judges have addressed the precise question of whether the UST has standing to conduct 2004 exams of bankruptcy creditors, including mortgage holders, even though the UST has no direct pecuniary interest in the outcome of the matter. *See BAC Home Loans Servicing, L.P. v. McDermott (In re Santiago)*, 2011 WL 1257209 (N.D.Ohio March 31, 2011); *In re Davis*, 452 B.R. 610 (Bankr. E.D.Mich.2011); *In re DeShetler*, 453 B.R. 295 (Bankr.S.D.Ohio 2011); *In re Youk-See*, 450 B.R. 312 (Bankr.D.Mass.2011); *In re Michalski*, 449 B.R. 273 (Bankr. N.D.Ohio 2011); *In re Wilson*, 413 B.R. 330 (Bankr.E.D.La.2009); *Countrywide*, 384 B.R. 373. These decisions leave little room for doubt that the UST has standing pursuant to the general authority of the UST to raise, appear, and be heard on any issue in a bankruptcy case granted in 11 U.S.C. § 307, and the UST's supervisorial and administrative duties described in 28 U.S.C. § 586. *Davis*, 452 B.R. 610, 2011 WL 3204680, at *3–5; *DeShetler*, 453 B.R. 295, 2011 WL 2746003, at *6–9; *Countrywide*, 384 B.R. at 381, 384–389. Consequently, this court concludes that the UST may conduct a 2004 exam of Chase even

without a direct pecuniary interest in the outcome.

■ Article III also requires that an injury exist capable of being redressed by the court. Chase argues that no such injury or threatened injury continues to exist in this case. Chase notes that the UST's request for a 2004 exam was made at the tail end of the Debtor's case after the estate has been administered and the adversary proceeding filed by the Debtor based on Chase's alleged misconduct has been resolved and dismissed with prejudice. Essentially, Chase argues that there is no pending activity in the bankruptcy case that can be tied to the UST's request and, as such, the court has no authority to grant it.

■ While Chase finds some support for its argument in the case of *In re Reyna*, 2009 WL 1140012 (Bankr.S.D.Tex.2009) [1], the court disagrees with the rationale. First, it is important to emphasize that a request for a 2004 exam is not, itself, a request for redress of an injury. Instead, a 2004 exam is a pre-litigation investigatory tool used to determine whether a sufficient basis exists to take subsequent action such as the filing of a substantive motion or complaint. *See DeShetler*, 2011 WL 2746003, at *9, *11; *Michalski*, 449 B.R. at 281. Consequently, a movant need not tie the request for the 2004 exam to matters currently pending in the bankruptcy case

---

1. In *Reyna*, the debtors filed an adversary proceeding against a mortgage servicer for failure to properly account for payments during the bankruptcy case and the filing prompted the UST to file a motion requesting a 2004 exam of the creditor. 2009 WL 1140012, at *1–2. After the adversary proceeding was settled and dismissed with prejudice, the Bankruptcy Court of the Southern District of Texas concluded that it lacked jurisdiction to grant the UST's motion for a 2004 exam. *Id.* at *2–3. With limited discussion, the court held that Article III of the Constitution limits judicial power to pending cases and controversies and that none exists once the debtor's adversary proceeding was settled and the underlying bankruptcy case was fully administered and closed. *Id.* at *2. The court appears to have closed the bankruptcy case after the UST filed its motion for a 2004 exam and while that motion remained pending. *Id.* at *1–2. Moreover, *Reyna* does not analyze a 2004 exam from the perspective of its use as an investigatory tool that does not need to be tied to a pending matter within a bankruptcy case. For these reasons, the court finds that *Reyna* is not persuasive.

or adversary proceeding. *DeShetler,* 2011 WL 2746003, at *11 (noting that no pending contested matter is required); *Michalski,* 449 B.R. at 281.

 Nonetheless, while permissively utilized, this investigatory tool does have its limits. An examination should not be allowed to take place for purposes of abuse or harassment. *DeShetler,* 453 B.R. at 301. Furthermore, the " 'examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery.' " *Id.* (quoting *In re Fearn,* 96 B.R. 135, 138 (Bankr.S.D.Ohio 1989) (J. Cole)). *See also Countrywide,* 384 B.R. at 392 (noting the court's legitimate concern that the UST could use 2004 examinations to "unfairly intrude into the private business affairs of creditors and chill their participation in the bankruptcy process"). Consequently, upon a creditor's objection, the examiner must demonstrate "good cause" for the requested examination requiring the court to consider the "totality of the circumstances." *DeShetler,* 453 B.R. at 301. Generally, this requires the proposed examiner to show that the examination is necessary to establish a claim or that the denial of such a request would cause the examiner undue hardship or injustice. *In re Express One Intern.,*

*Inc.,* 217 B.R. 215, 217 (Bankr.E.D.Tex. 1998). The importance of the information to the examiner is then balanced against the burdens to the creditor. *Id.; DeShetler,* 453 B.R. at 301.

 In the case at hand, the UST asserts that it is not engaging in a random investigation of a mortgage creditor but, instead, was prompted to file its motion by the serious allegations in the Debtor's adversary complaint. If its examination of Chase should reveal facts in support of the Debtor's allegations, the facts could form the basis for a motion for sanctions, a type of motion that is within the UST's authority to file.[2] *Walton,* 2009 WL 1905035 at *4 (holding that the UST has the statutory authority to bring an action for sanctions against a mortgage creditor in a bankruptcy case based on misconduct including an unfounded foreclosure action that violated the confirmed plan and discharge order).

Furthermore, the UST argues that if it did file a motion for sanctions, that motion would not be rendered moot, nor the court's power to sanction removed, by the Debtor's settlement of the adversary proceeding filed against Chase because a federal court retains jurisdiction to consider collateral issues like sanctions even after the underlying proceeding is no longer pending.[3] *Red Carpet Studios Div. of*

---

**2.** If the UST would bring such a motion, the court has the power to impose sanctions for violation of its orders pursuant to its inherent authority to manage its own affairs as well as the powers described in 11 U.S.C. § 105(a). *See Hale v. Trustee,* 509 F.3d 1139, 1148 (9th Cir.2007) (describing the bankruptcy court's inherent power to sanction vexatious conduct presented before the court). Indeed, Chase has not questioned the court's inherent power to impose sanctions based on a party's violation of court orders.

**3.** Chase further argues that the court lacks authority to consider the UST's motion for a 2004 examination because the Debtor's bankruptcy case had been fully administered and

closed. This meritless argument ignores the fact that, prior to the UST filing its motion, the bankruptcy case had been reopened by the Debtor to file her adversary complaint against Chase and the case remains open to this day. It is also worth noting that reopening a case pursuant to 11 U.S.C. § 350(b) is considered a ministerial action and is routinely granted for a variety of reasons. *See Olson v. Aegis Mort. Corp. (In re Bloxsom),* 389 B.R. 52, 60–61 (Bankr.W.D.Mich.2008) (the mere reopening of a case is a ministerial act requiring nothing more than a showing of cause); *Countrywide,* 384 B.R. at 390 n. 15 ("... the Bankruptcy Code contemplates reopening closed cases on a liberal basis."). *See also Office of the U.S. Trustee v. Bresset (In re*

*Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 645 (6th Cir.2006); *Walton,* 2009 WL 1905035, at *5 (noting that the UST's action for sanctions against a mortgage holder was not rendered moot by the resolution of the dispute between the debtor and the mortgage holder regarding the same conduct). If a motion for sanctions were filed by the UST based on the same facts in the Debtor's complaint, a complaint that included a contempt action for violating 11 U.S.C. § 524(i), the court is unsure what aspects of the motion would be "collateral" to the merits of the Debtor's action. Putting this speculation aside, presently before the court is not a motion for sanctions, but a motion for a 2004 exam which, as noted before, is an investigatory tool that may be used by the UST to determine whether an abuse of the bankruptcy process has occurred. As such, its use by the UST may reveal other transgressions in this case beyond those cited by the Debtor in the adversary complaint and, consequently, the 2004 exam is not rendered moot by the resolution of the Debtor's private action for damages. *See Davis,* 452 B.R. at 614 (concluding that the UST's motion for a 2004 exam of a mortgage creditor for possible abuse of the bankruptcy process was not rendered moot by the debtor's resolution of a motion for a violation of the automatic stay relating to the same conduct).

 The court concludes that the UST has standing to conduct a 2004 exam of Chase and has demonstrated "good cause" for the exam at least to the extent that the UST wants to investigate whether an abuse of the bankruptcy process occurred with respect to this Debtor and/or her bankruptcy case.[4]

## B. Scope of the 2004 Examination

 Next the court turns to the scope of the requested 2004 exam. While the permitted scope is extremely broad and has been frequently compared to a lawful fishing expedition, it is, as stated before, not without limits. *DeShetler,* 453 B.R. at 301 (citing *Fearn,* 96 B.R. at 137–38). One limitation is spelled out in the language of Rule 2004 which states:

(b) *Scope of Examination.* The examination of an entity under this rule … may relate only to the acts, conduct, or property or to the liabilities and financial condition of *the debtor,* or to any matter which may affect the administration of *the debtor's estate,* or to the debtor's right to a discharge.

Fed. R. Bankr.P. 2004(b) (emphasis added). Consequently, "[t]he use of a 2004 examination is not permitted for matters not related to the financial condition of a debtor or the debtor's estate." *DeShetler,* 453 B.R. at 301.

 The proper scope of the examination is further limited by consideration of the costs and impact of the examination on the creditor to be examined. Essentially, courts have employed a "sliding scale" or balancing test so that a greater level of cause must be demonstrated when the potential burden and intrusiveness to the

*Engel),* 246 B.R. 784 (Bankr.M.D.Penn.2000) (reopening bankruptcy case to allow the UST to file motion for sanctions against the debtor's attorney).

4. The good cause requirement is linked to the scope of the examination in that a party must show greater cause for a more intrusive examination. *See DeShetler,* 453 B.R. at 301; *Michalski,* 449 B.R. at 282 (employing *Coun-* *trywide's* sliding scale test balancing the potential examiner's need for the information against the potential intrusiveness involved). In this section of the decision, the court limits its discussion to whether the UST has demonstrated sufficient cause to conduct an examination generally. The court will discuss the appropriate scope of that examination based on a balancing of the interests in the next section.

creditor is high. *Id.; Countrywide*, 384 B.R. at 393. As stated by the court in *Countrywide:*

> Under this standard, inquiries that are tightly-focused on the creditor's relationship with a particular debtor will require a relatively low level of good cause because they represent a low level of intrusion into the creditors' business affairs and a low risk of abuse. Inquiries that seek far-reaching information on policies and procedures of general application in the creditor's operation will require a correspondingly higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse.

384 B.R. at 393.

■ Taking into consideration the standard described in *Countrywide*, the court discerns two types of requests made by the UST in the exhibit that sets the intended scope of the UST's examination and document requests [Doc. 61, Ex. B]. The first type, exemplified in the UST's first two requests, are inquires that directly relate to the Debtor. More specifically, the UST requests information about the Debtor's specific loan history with Chase and the Debtor's correspondence with Chase on or after November 5, 2009. These requests are narrowly focused on Chase's relationship with this particular debtor, do not delve deeply into the business operations of Chase and would not be overly burdensome to produce. As noted in the previous section, the UST has demonstrated "good cause" for information pertaining to whether an abuse of the bankruptcy process occurred in this case and/or with respect to the Debtor. Consequently, the court will permit the UST to proceed with a 2004 exam directed towards these first two requests.

■ However, the UST's third and fourth requests represent a much broader and far-reaching inquiry. The information requested is not specific to the Debtor or her estate but is, instead, a demand for policies and procedures relating to how Chase processes payments and the transfer of mortgage accounts from Washington Mutual and other loan servicers to Chase. The UST reasons that the information is necessary to enable the agency to ascertain whether Chase's failures in this case are the result of a one-time mistake or deficient policies that are in "violation of the law" [Doc. 76, p. 11]. However, the UST does not describe what laws might be violated or whether this court would have jurisdiction to address the issue. While the UST vaguely claims that the information would also be relevant to the "propriety and scope of sanctions" [*Id.*], the UST fails to specify what type of sanctions the UST might seek in this case that would make these broad requests relevant. Instead, based upon the UST's statements at the hearing, the court is persuaded that the UST's informational requests are an attempt to follow a nationwide mandate from the UST's Executive Office to collect information on mortgage holders and servicers to correct "systemic" problems so that they may be avoided in future bankruptcy cases.

Regardless of how the court may view the UST's mandate, the explicit language of Rule 2004 requires that an examination concern the debtor or the debtor's estate. The information sought by the UST in its third and fourth requests goes well beyond these strictures. The requests cross the line into the type of full scale investigation of a non-debtor's private affairs that other courts have deemed a serious concern and the UST makes the requests without any serious attempt to connect them to this specific bankruptcy case. *Countrywide*, 384 B.R. at 392 ("While the UST was undoubtedly intended to be a 'watchdog' of the bankruptcy system, that cannot and should not be viewed as providing a license for

the UST to engage in potentially invasive and expensive Rule 2004 discovery based on nothing more than her own curiosity."). *See also DeShetler,* 453 B.R. at 309; *Michalski,* 449 B.R. at 283 (concluding that the UST failed to provide sufficient cause for production of a mortgage holder's general policies and procedures because the requests were very broad, intrusive and beyond the scope of a 2004 examination relating only to the debtors at issue).

The court acknowledges that the supervisory role of the UST gives it a legitimate interest in monitoring the conduct of national mortgage holders and servicers in current and future bankruptcy cases. Nonetheless, a 2004 exam is simply not an appropriate tool for obtaining a broad range of information from a non-debtor that is not relevant to the debtor or her estate. Consequently, the court concludes that the UST's third and fourth requests are outside the appropriate scope of a 2004 exam and will not be permitted.[5]

## CONCLUSION

The court grants the UST's Motion for a 2004 Exam requiring Chase to produce documents and, if necessary, submit to an oral examination. However, the scope is limited to matters described in the UST's first two requests listed in the exhibit attached to the motion [Doc. 61, Ex. B]. The UST's motion is denied with respect to the third and fourth requests.

**SO ORDERED.**

---

5. To the extent that Chase requested a confidentiality order with respect to broad policies and procedures that the court might require Chase to turn over to the UST as part of the 2004 exam, the court's decision to limit the scope of the UST's 2004 exam should eliminate the need for such an order.