**In re MITTCO, INC., Debtor.**

**Bankruptcy No. 82–03654.**

United States Bankruptcy Court,
E.D. Wisconsin.

Sept. 25, 1984.

K. Thor Lundgren, Michael, Best & Friedrich, Milwaukee, Wis., for Alexander Grant & Company.

E.H. Snyder, Milwaukee, Wis., for Dan River, Inc.

### DECISION AND ORDER

JAMES E. SHAPIRO, Bankruptcy Judge.

Alexander Grant & Company ("Grant") has moved to quash an order of this Court dated July 6, 1984 which, pursuant to Bankruptcy Rule 2004 authorized the examination of Grant by Dan River, Inc. ("Dan River"), a creditor of Mittco, Inc.

("debtor") and also authorized Dan River to examine and copy Grant's working papers used in the preparation of the debtor's audited financial statements. Grant has also moved, in the alternative, for a protective order. In its July 16, 1984 order, this Court instructed both Grant and Dan River to attempt to mutually agree upon a protective order and, if unable to do so, further authorized Grant by a date certain to bring this matter before this Court. Because of an impasse between the parties on the terms of a protective order, the above-entitled motions have been filed. Each will be considered separately.

### MOTION TO QUASH ORDER FOR EXAMINATION

This Court is persuaded that this motion should be denied. The scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted. *In re G.H.R. Energy Corp.*, 35 B.R. 534 (Bankr.D.Mass.1983); *In re Clearview Concrete Products, Inc.*, 23 C.B.C.2d 373 (Bankr.E.D.N.Y.1980). Where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed. Nevertheless, there are limits. An examination cannot be used for purposes of abuse or harassment. It also cannot stray into matters which are not relevant to the basic inquiry. In this case, paragraph 3 of an affidavit by Dan River's attorney in support of the motion for examination states that this examination is "for the purposes of prosecuting the recovery of assets of the debtor and to determine whether any assets of the debtor are undisclosed and not accounted for." Upon further inquiry into this area, at a hearing conducted before this Court on June 11, 1984, Dan River's attorney, Mr. Snyder, reassured this Court that the primary purpose is to inquire into the possibility of obtaining assets for the benefit of the es-

tate.[1] This is a proper area of inquiry since it pertains to the debtor's financial affairs and would affect the administration of the debtor's estate.

 Under these circumstances, this Court accepts Mr. Snyder's explanation. Bankruptcy Rule 2004(a) authorizes an examination by any party in interest. It is not limited to an examination by a bankruptcy trustee. Dan River, being a creditor, qualifies as a party in interest to conduct this examination. The suggestion by Grant that Dan River is proceeding for its own purposes and abusing the processes of this Court at this particular stage is purely conjectural. Furthermore, in *In re Mantolesky*, 14 B.R. 973 (Bankr.D.Mass.1981), the court states at page 979:

> "—the law is clear that pending litigation by others against the person sought to be examined and the possible use of 205 [now 2004] testimony in that collateral litigation is not sufficient reason for denying examination."

 There has been no reason shown to either deny access to or place a bridle upon the use of Grant's working papers relating to the audited financial papers of the debtor from examination by labeling such information as "confidential". An accountant's working papers are clearly relevant in this type of inquiry. *In the Matter of the Hawaii Corp.*, 30 Fed. Rules Serv.2d 761 (D.Hawaii 1980). Furthermore, there is no confidential accountant-client privilege. *U.S. v. Arthur Young and Co.*, — U.S. ——, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); *Couch v. U.S.*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). In a recent decision, *Broan Mfg. Co., Inc. v. Westinghouse Electric Corp.*, 101 F.R.D. 773 (D.C.E.D.Wis.1984), Judge Reynolds asserted that a solid presumption exists favoring an open discovery process and that the public's access to that process should not be restricted.

Under these circumstances, the first two arguments made by Grant in support of its motion to quash, namely: (1) that a creditor in seeking an examination is attempting to abuse the processes of this Court; and (2) that Bankruptcy Rule 2004 does not by its terms permit this examination, are rejected.

 Grant's final argument in support of its motion to quash rests upon constitutional grounds. It has been suggested that § 106 [2] of the newly enacted "Bankruptcy

---

1. Mittco, Inc. Tr. June 11, 1984, pp. 9–10:

 THE COURT: "Now I will ask you that, Mr. Snyder, specifically what is it you're seeking to do by—in discovery, is it for the estate or is it for your client individually outside of the court?

 MR. SNYDER: Primarily for the estate. The financial statements do not make any sense without any papers supporting them or find out whether property was omitted, whether property is not accounted for and those working papers are the only thing that will give us insight into the financial statement prepared by Alexander Grant. That would be for the benefit of the estate.

 MR. LUNDGREN: Isn't it a fact that you talked to one of the lawyers in our office and said the reason you wanted the papers was to decide whether you could sue Alexander Grant?

 MR. SNYDER: That may be a result but the judge asked us what the primary purpose is and I gave it to him candidly as I can and I'm proceeding basically for the purpose of the estate or for the benefit of the estate; and secondly where the trustee has refused to act on behalf of the estate Collyer (phonetically) has said anybody may act on behalf of the estate."
 \* \* \* \* \* \*

 Mittco, Inc. Tr. June 11, 1984, p. 13:
 THE COURT: "What the motion really intends to do is—conduct a discovery examination of Alexander Grant and Company and I am assuming from what I've heard here today that it is—with an aim or an attempt to determine whether or not by discovering or going through this examination there may or may not be assets for the benefit of all creditors. Is that correct, Mr. Snyder?

 MR. SNYDER: That's correct, your Honor."
 \* \* \* \* \* \*
 Mittco, Inc. Tr. June 11, 1984, p. 16:
 THE COURT: "Is it with the idea that should that—in effect occur that you do uncover assets then that would go into the estate and that your client would just be a creditor to share on a pro rata basis?

 MR. SNYDER: Absolutely without question."

2. SEC. 106(a):
 "Notwithstanding section 152 of title 28, United States Code, as added by this Act, the term of office of a bankruptcy judge who is serving on the date of enactment of this Act is extended to and expires four years after the date such bankruptcy judge was last appointed to such office or on October 1, 1984, whichever is later."

Amendments and Federal Judgeship Act of 1984" is a reappointment of sitting bankruptcy judges by Congress. The argument is then made that this violates Article II, Section 2 of the United States Constitution in that it is an appointment by Congress of bankruptcy judges in contravention of the Constitution which vests exclusive authority to appoint in the Executive and Judiciary Branches. This argument is also rejected. Congress did not appoint bankruptcy judges. By virtue of its recent action, it only permitted existing bankruptcy judges who had previously been appointed by the appropriate authority, to continue in office. The statutory enactment merely extends the term in office of all sitting bankruptcy judges.

### MOTION FOR PROTECTIVE ORDER

In the event this Court does not grant the motion to quash, Grant has moved in the alternative for a protective order. A protective order under some circumstances may be granted in accordance with Rule 26(c) of the Federal Rules of Civil Procedure "for good cause shown". A court has broad discretion to manage the discovery process in a fashion that will implement the philosophy of full disclosure of relevant information and at the same time afford the participants maximum protection against harmful side effects. Moore's Manual, *Federal Practice and Procedure*, § 15.02[1] (1983). The crucial question, therefore, is whether or not there has been "good cause shown" which would justify a protective order.

Grant asks that all documents produced and the examination itself be limited to information possessed by Grant as to:

 a. The acts or conduct of the debtor

 b. Property owned by the debtor

 c. Liability of the debtor

 d. The financial condition of the debtor

This request merely repeats what is already contained within Bankruptcy Rule 2004(b) specifying the proper scope of the examination. A protective order would be superfluous in this regard.

Grant further seeks an order requiring that any information which is disclosed to Dan River's counsel remain confidential and not be disclosed to other persons. A prerequisite to such a protective order also must be founded upon a showing of "good cause". As previously stated in this opinion, there is no confidential accountant-client privilege. The only reason suggested by Grant to justify such an order is its apprehension that Dan River is seeking to "stir up" litigation against it. At this stage of the proceedings, this is sheer speculation. If there is no basis for such concern, then Grant should welcome an opportunity to dispel any lingering doubts. Because this Court has ruled that the examination is being conducted with the prime aim of benefiting the bankruptcy estate, the fact that it may also produce information which in turn may collaterally be used by third parties in separate litigation outside of the bankruptcy case, is no reason to restrict its use or to shield parties, including Grant, from such possible litigation. *See, In re Mantolesky, supra. See also, Williams v. Johnson & Johnson,* (D.C.S.D. N.Y.1970), 14 Fed. Rules Serv.2d 137 holding that there is nothing improper in sharing "the fruits of discovery".

IT IS THEREFORE ORDERED that Grant's motions to quash this Court's order for examination and for a protective order are denied.