**In re J. Bradley FEARN, Barrie L. Fearn, Debtors.**

**Bankruptcy No. 2–87–05587.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 1, 1989.

Donald B. Leach, Jr., Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for First Knox Nat. Bank.

Sara J. Daneman, Columbus, Ohio, Chapter 7 Trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Office of the U.S. Trustee, Columbus, Ohio.

Yvette A. Cox, Arter & Hadden, Columbus, Ohio, for debtors.

F. Richard Heath, Hite and Heath, Utica, Ohio, for Production Credit Ass'n of the Fourth District.

Michael W. Pettit, Squire, Sanders & Dempsey, Columbus, Ohio, for Foote Industries, Inc.

## ORDER ON MOTION TO QUASH OR MODIFY SUBPOENA

R. GUY COLE, Jr., Bankruptcy Judge.

This matter is before the Court upon the Motion to Quash or Modify Subpoena ("Motion") filed by Foote Industries, Inc. ("Foote") in this Chapter 7 case. Foote seeks an order of the Court quashing a subpoena (the "Subpoena") issued by the Clerk of the Bankruptcy Court on September 29, 1988. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(A) and (O).

The Subpoena directs Foote to produce a number of documents and records pertaining to an agreement by and between Foote and Dana Corporation ("Dana") under which all of Foote's assets were sold to Dana. This agreement was entered into on or about October 30, 1987. At the time the sale between Foote and Dana was consummated, Dana adopted a plan of liquidation under which the outstanding stock of Foote was to be redeemed. Under the liquidation plan a series of distributions were to be made to Foote's shareholders, including the debtors, J. Bradley and Barrie Fearn.

First Knox National Bank ("First Knox") has filed a proof of claim with the Court indicating that its claim is secured by, *inter alia*, 92 shares of Foote's Class A stock which were pledged to First Knox by the debtors. The duly-appointed Chapter 7 trustee, Sara Daneman ("Trustee"), has lodged an objection to First Knox' claim. In addition, she has filed an adversary complaint to determine the validity and extent of the security interest held by First Knox in the stock and to avoid a preferential transfer allegedly made by virtue of the October 23, 1987, pledge of the debtors' stock to First Knox.

The Trustee has filed a motion to compromise the estate's claims against First Knox. The proposed compromise would resolve the pending preference action as well as the Trustee's objection to First

Knox' claim. Production Credit Association of the Fourth District ("PCA") has filed an objection to the proposed compromise. PCA, which holds both a secured claim and a $90,000 unsecured claim, submits that, absent the documents and records which it seeks by way of the Subpoena,[1] it will be unable to ascertain whether the proposed compromise is in its best interest as an unsecured creditor. According to PCA, it is possible that distributions to the debtors under Foote's liquidation plan may be less favorable than distributions to other shareholders, including family members of the debtors. Hence, the transaction by and between Dana, Foote and Foote's shareholders may be subject to attack as a fraudulent transfer pursuant to 11 U.S.C. § 548. It must have access to the materials requested by the Subpoena, PCA argues, in order to assay whether the proposed compromise is in its best interest as well as the best interest of the entire unsecured creditor body.

Foote seeks to quash the Subpoena on several grounds. First, Foote submits that the Subpoena exceeds the permissible scope of inquiry under Bankruptcy Rule ("B.R.") 2004. Second, Foote suggests that the Subpoena is intended merely to harass Foote, inasmuch as most, if not all, of the information sought by the Subpoena has previously been provided to PCA. Finally, according to Foote, because it has moved to quash the Subpoena under Fed. Rule Civ.Proc. 45(b) (made applicable by B.R. 9016), it is incumbent upon PCA to demonstrate that good cause exists for the requested discovery. PCA, Foote asserts,

has not met its burden of demonstrating the existence of good cause. PCA responds by asserting that the requested discovery clearly falls within the ambit of B.R. 2004 and that such discovery is a necessary prerequisite to formulation of its position respecting the proposed compromise.

▮ Having reviewed the pleadings filed by the parties and heard the. oral arguments made at hearing, the Court is persuaded that Foote's Motion should be denied. The issue before the Court is whether the documents requested by PCA are properly discoverable pursuant to B.R. 2004. The parameters of a Rule 2004 examination are delineated in subsection (b) of the Rule:

(b) Scope of Examination. The examination of any person under this rule or of the debtor under § 343 of the Code *may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.... (Emphasis added).*

It is well-established that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. *In re GHR Energy Corp.,* 35 B.R. 534, 537 (Bankr.D.Mass.1983); *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr.E.D.Wis. 1984); *Matter of Wilcher,* 56 B.R. 428, 433 (Bankr.N.D.Ill.1985); *In re Texaco, Inc.,* 79 B.R. 551, 553 (Bankr.S.D.N.Y.1987). The scope of examination permitted pursuant to Rule 2004 is wider than that allowed under

---

1. The Subpoena requires the production of the following:

1. Copy [sic] of all agreements between Foote and Dana, for the sale of assets, believed to be dated October 30, 1987, including all schedules or other attachments thereto;

2. All records of names and addresses of shareholders of Foote from January 1, 1975, to the present, showing the number and class of shares owned by each;

3. All records pertaining to payments made to, or on behalf of, Foote shareholders in 1987 and 1988, and copies of all agreements whereby any shareholder agrees or directs to have funds paid by Foote to a third party on behalf of said shareholder;

4. All records pertaining to distributions of funds, or agreements to distribute funds, received or to be received from Dana under the agreement dated October 30, 1987 or other proper date.

5. All written agreements or memoranda of oral agreements between Foote and any of its shareholders for redemption or liquidation of shares of stock in the corporation.

6. All records of loans to Foote by any shareholder, from January 1, 1975, to the present.

7. All records of loans by Foote to any shareholder, from January 1, 1975, to the present.

the Federal Rules of Civil Procedure and can legitimately be in the nature of a "fishing expedition". *See, In re Vantage Petroleum Corp.,* 34 B.R. 650, 651 (Bankr.E.D. N.Y.1983); *Wilcher,* 56 B.R. at 433. Although the primary purpose of a Rule 2004 examination is to permit a party in interest to quickly ascertain the extent and location of the estate's assets, *see, In re Good Hope Refineries, Inc.,* 9 B.R. 421, 423 (Bankr.D. Mass.1981) (discussing the purpose of former Bankruptcy Rule 205), such examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor. *See, Chereton v. United States,* 286 F.2d 409, 413 (6th Cir.) *cert. denied,* 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961).

 While the scope of a Rule 2004 examination is very broad, it is not limitless. The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery. *Texaco,* 79 B.R. at 553. Moreover, an examination cannot be used for purposes of abuse or harassment. *Mittco,* 44 B.R. at 36.

Here, the material sought to be discovered does pertain to the debtors' property and financial condition and obviously would have an effect on the administration of their estate. PCA seeks discovery of matters which could conceivably establish that other parties obtaining distributions pursuant to the Foote liquidation plan received a fraudulent transfer from the debtors. Such information clearly falls within the confines of a Rule 2004 examination. *See, In re Foxcroft Bldg. Corp. Foxcroft, Ltd.,* 13 B.R. 837 (Bankr.S.D.Fla.1981); *Wilcher,* 56 B.R. at 433.

In sum, an inquiry pursuant to Rule 2004 may "cut a broad swath through the debtor's affairs, those associated with him, *and those who might have had business dealings with him."* *In re Mantolesky,* 14 B.R. 973, 976 (Bankr.D.Mass.1981) (emphasis added). The material sought by way of the Subpoena is, therefore, subject to discovery under Rule 2004. Further, abuse or harassment on PCA's part has not been shown; indeed, the information sought to be discovered by PCA falls well within the contours of Rule 2004. Moreover, in response to Foote's Motion to Quash, PCA has shown good cause for the discovery to go forward. Accordingly, Foote's Motion is not meritorious and shall not be granted.

Based upon the foregoing, the Motion of Foote Industries, Inc., to Quash or Modify Subpoena is hereby DENIED.

IT IS SO ORDERED.