In re Thomas L. DeSHETLER, Cheryl
A. DeShetler, Debtors.

No. 10–36557.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

July 12, 2011.

Harold Jarnicki, Lebanon, OH, for Debtor.

**DECISION GRANTING IN PART AND DENYING IN PART THE UNITED STATES TRUSTEE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE EXAMINATION OF AND REQUIRING THE PRODUCTION OF DOCUMENTS BY WELLS FARGO HOME MORTGAGE**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction

This contested matter is before the court on the motion filed by the United States trustee [1] seeking an order authorizing him to conduct an examination of Wells Fargo Home Mortgage, one of the nation's largest residential mortgage lenders, pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016. Wells Fargo objects to this request.

As a backdrop to understanding this contested matter, the UST's motion seeking to conduct a 2004 examination comes in the wake of the mortgage crisis that has gripped this nation for the last several years, highlighted by an unprecedented number of foreclosures and litigation in the bankruptcy courts concerning issues of standing and documentation. [2] The volume of foreclosure proceedings has caused strain on mortgage servicers' ability to process the large volume of delinquent loans encountered in the last several years. Compounding the challenges arising out of

---

1. "United States trustee" includes a designee of the United States Trustee. 11 U.S.C. § 102(9). For simplicity, the court will use the abbreviation "UST" whether referring to the movant, Daniel M. McDermott, United States Trustee for Region 9, his designee, or the United States Trustee program generally.

2. *See* e.g., *Harker v. Wells Fargo Bank, NA (In re Krause)*, 414 B.R. 243, 268, n. 22 (Bankr. S.D.Ohio 2009); *In re Parsley*, 384 B.R. 138 (Bankr.S.D.Tex.2008); *Nosek v. Ameriquest Mortgage Co. (In re Nosek)*, 386 B.R. 374 (Bankr.D.Mass.2008), *aff'd in part, vacated in part* 406 B.R. 434 (D.Mass.2009), *aff'd as modified* 609 F.3d 6 (1st Cir.2010); *In re Foreclosure Cases*, 521 F.Supp.2d 650 (N.D.Ohio 2007).

the sheer volume of the foreclosure filings is that most of these loans are syndicated, having been originated at a local level, bundled with other mortgage loans, and then sold to private investors, resulting in at least one and usually multiple transfers of the loan.[3] Thus, the state and federal courts, particularly the bankruptcy courts, have been engulfed by the "perfect storm" arising out of the mass syndication of mortgage loans and the ensuing financial crisis.

The UST's motion raises several issues. The threshold issue is whether the UST has the authority to conduct an examination and to compel the production of documents pursuant to Federal Rule of Bankruptcy Procedure 2004. If the UST possesses such authority, two additional issues must be addressed: 1) whether the UST has demonstrated "good cause" under Rule 2004 for this request; and 2) whether the scope of the requested examination is appropriate.

For the reasons to be discussed, the court finds that the UST has the authority to conduct an examination under Rule 2004, including the ability to compel the production of documents. The court further finds that the UST has established good cause. However, the court limits the scope of the examination to the documents related to Wells Fargo's claim that it is the holder, or other person entitled to enforce, the promissory note that is the subject of this inquiry. Any oral examination, as limited by this decision, shall only proceed in the event that the UST determines that

Wells Fargo has not produced sufficient documentation to establish that it is entitled to enforce the note and when that occurred.

## II. Factual and Procedural Background

Thomas L. DeShetler and Cheryl A. DeShetler (the "Debtors") filed a joint chapter 13 petition on October 11, 2010 (doc. 1). Wells Fargo Home Mortgage filed a proof of claim (claim 9–1) on November 19, 2010 on behalf of Well Fargo Bank, N.A.[4] Attached to Wells Fargo's proof of claim are copies of a mortgage granted to Washington Mutual Bank, FA (the "Mortgage") and a promissory note payable to Washington Mutual Bank, FA endorsed in blank (the "Note"). On December 8, 2010 the court entered an order confirming the Debtors' plan (doc. 21).

The UST filed a motion seeking to conduct a 2004 examination on December 8, 2010 (doc. 19) (the "2004 Motion"); on January 7, 2011 Wells Fargo filed an objection to the 2004 Motion (doc. 27) on February 22, 2011 the UST filed a reply (doc. 37) and on March 15, 2011 Wells Fargo filed a supplemental brief (Doc. 43) and a *Request for Hearing* (doc. 44), which the court granted (doc. 45). The court heard oral argument on April 13, 2011.

## III. Positions of the Parties

The UST argues that he may conduct a 2004 examination because Wells Fargo's proof of claim fails to attach documentation that Wells Fargo had standing to file

---

3. *See In re Saffold,* 373 B.R. 39, 42 (Bankr. N.D.Ohio 2007); Chris Markus, Ron Taylor & Blake Vogt, *From Main Street to Wall Street: Mortgage Loan Securitization and New Challenges Facing Foreclosure Plaintiffs in Kentucky,* 36 N. Ky. L.Rev. 395 (2009).

4. The proof of claim describes the creditor as Wells Fargo Bank, N.A. and the name to

which notices and payments should be sent as Wells Fargo Home Mortgage. The United States Trustee, in his motion, used Wells Fargo Home Mortgage while the creditor used Wells Fargo Bank, NA in its filings. The court will simply refer to Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage collectively as "Wells Fargo."

its claim. In particular, the UST asserts that the Mortgage and Note attached to the proof of claim reference only Washington Mutual Bank, FA and that it is unknown whether the Note and Mortgage were ever properly assigned to Wells Fargo. To assist in determining the validity of Wells Fargo's claim, the UST requests that Wells Fargo produce the "transactional mortgage loan history on the Debtors' mortgage loan, along with payments for escrow advances made by Wells Fargo." 2004 Motion, Exhibit A. The UST also requests that Wells Fargo provide evidence of the chain of assignment of the Mortgage and endorsement of the Note. Finally, the UST seeks to examine a representative of Wells Fargo regarding those documents.

In response, Wells Fargo asserts that the statutory powers granted to the UST do not include the authority to investigate and determine validity of claims based on state law rights and unilaterally increase the documentation necessary to file a valid proof of claim under Federal Rule of Bankruptcy Procedure ("BR") 3001.[5] Wells Fargo further argues that, assuming that the UST has the statutory powers to conduct a 2004 examination, the UST lacks good cause to request a 2004 examination because the proof of claim establishes that Wells Fargo holds the Note since a copy is attached to its proof of claim and because, under Ohio law, security follows the debt, it need not provide a copy of the assignment of the Mortgage. Finally, Wells Fargo challenges the UST's request for a "complete loan history" as unnecessary. If the court allows the 2004 examination, Wells Fargo concludes that the scope of the document requests must be narrowed and any examination conducted at the place of employment of the individual representative who is examined.

## IV. Legal Analysis

### A. Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 05–02 of the United States District Court for the Southern District of Ohio, which is the general order of reference referring all bankruptcy proceedings and matters to this bankruptcy court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### B. The Role of the United States Trustee's Program

Because Wells Fargo challenges the UST's authority to conduct 2004 examinations, an examination of the role of the UST, including the relevant statutes, is in order.

The UST was created by the Bankruptcy Reform Act of 1978 (the "1978 Act") as a pilot effort in select federal judicial districts of the United States to remedy the perceived institutional bias arising out of bankruptcy judges' handling of both the judicial and administrative aspects of the bankruptcy system. H.R.Rep. No. 595, 95th Cong., 1st Sess. 100, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6061. Under the program, the UST was appointed to take over the administrative functions previously assumed by bankruptcy judges. *Id.*

To implement the newly created program, the 1978 Act added a new chapter to Title 28 of the United States Code, chapter 39, which addresses, among other things, the appointment, role, and salaries of United States trustees. *See* 28 U.S.C. §§ 581–586(a). Section 586 sets forth a list of the

---

5. Unless otherwise noted, all references to rules of court shall be to the Federal Rules of Bankruptcy Procedure ("BR").

duties of the UST and defines the United States Attorney General's supervision to be exercised over these trustees. 28 U.S.C. § 586; *In re Countrywide Home Loans, Inc.,* 384 B.R. 373, 380 (Bankr. W.D.Pa.2008). It provides in relevant part that:

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall—

(3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12, 13, or 15 of title 11 by, whenever the United States trustee considers it to be appropriate—

[ . . . ]

(C) monitoring plans filed under chapters 12 and 13 of title 11 and filing with the court, in connection with hearings under sections 1224, 1229, 1324, and 1329 of such title, comments with respect to such plans;

[ . . . ]

(F) notifying the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States and, on the request of the United States attorney, assisting the United States attorney in carrying out prosecutions based on such action;

(G) monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress . . .

28 U.S.C. § 586(a). The legislative history explains:

The Trustee in each case will be responsible for the administration of the case. The bill gives him adequate powers to accomplish what must be done, and relieves him of the necessity for applying to the court and receiving court approval for every action he proposes to take. The bill introduces the concept that the trustee may take any action necessary to the administration of the case if he notifies those parties in interest to whom notice would be appropriate under the particular circumstances . . . and provide an opportunity for a party in interest to object.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 107–108, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6069. Based on the pilot program's success, Congress expanded the program and made it permanent through the enactment of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 (the "1986 Act"), P.L. 99–554. *See also U.S. Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys. Inc.),* 33 F.3d 294, 296 (3rd Cir. 1994).

As part of the 1986 Act, Congress added a new provision to the Code—11 U.S.C. § 307. That section provides that "[t]he United States trustee *may raise* and may appear and be heard *on any issue in any case or proceeding* under this title but may not file a plan pursuant to section 1121(c) of this title" (emphasis added). The House Report explains:

The U.S. Trustee is given standing to raise, appear, and be heard on any issue in any case or proceeding under Title 11, U.S. Code—except that the U.S. Trustee may not file a plan in a Chapter 11 case. In this manner, the U.S. Trustee is given the same right to be heard as a party in interest, but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised.

H.R.Rep. No. 764, 99th Cong., 2d Sess. 27, *reprinted in* 1986 U.S.C.C.A.N. 5227, 5240.

Wells Fargo advocates a view that restricts the powers granted to the UST to those specifically enumerated in § 586 and posits that § 307 is merely an enabling

provision granting the UST the standing necessary to perform his duties under § 586. The UST argues that, pursuant to his congressionally mandated role as a "watchdog" of the bankruptcy system, § 586 and § 307 confer upon him broad authority to seek and conduct 2004 examinations.

### C. Rule 2004 Examinations

The UST seeks to conduct an examination of Wells Fargo pursuant to BR 2004. It provides in pertinent part as follows:

(a) Examination on motion. On motion of any party in interest, the court may order the examination of any entity.

(b) Scope of examination. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In ... an individual's debt adjustment case under chapter 13 ..., the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

(c) Compelling attendance and production of documents. The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending. * * * *

(e) Mileage. An entity other than a debtor shall not be required to attend as a witness unless lawful mileage and witness fee for one day's attendance shall be first tendered....

BR 2004.

■ The purpose of 2004 is to provide a tool to parties to a bankruptcy, particularly trustees, to obtain information concerning "the acts, conduct, or property" of the debtor, "the liabilities and financial condition of the debtor," "any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge," and in a Chapter 11, 12, or 13 case, "the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." *See* BR 2004(b); *In re GHR Energy Corp.*, 35 B.R. 534, 536–38 (Bankr.Mass.1983). *See also In re Express One Int'l, Inc.*, 217 B.R. 215, 216 (Bankr.E.D.Tex.1998) (The general purpose of a BR 2004 examination is to review the estate's condition for the benefit of the rights of creditors.).

■ Bankruptcy courts have broad discretion in determining whether to order a 2004 examination. *Bank One, Columbus NA v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D.Ohio 1992); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 708–09 (Bankr.S.D.N.Y.1991); and *In re Fearn*, 96 B.R. 135 (Bankr. S.D.Ohio 1989). As Judge Cole noted, a 2004 examination's scope is very broad:

It is well-established that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. The scope of examination permitted pursuant to Rule 2004 is wider than that allowed under Federal Rules of Civil Procedure and can legitimately be in the nature of a "fishing expedition". Although the primary purpose of a Rule 2004 examination is to permit a party in interest to quickly ascertain the extent and location of the estate's assets, such examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor.

*Id.* at 137–38 (citations omitted). However, Judge Cole also noted that, while broad, the scope of Rule 2004 examinations is not "limitless." *Id.* at 138. "The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *Id.* Moreover, an examination cannot be used for purposes of abuse or harassment. *Fearn,* 96 B.R. at 138; *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr.E.D.Wisc.1984).

 The use of a 2004 examination is not permitted for matters not related to the financial condition of a debtor or a debtor's estate. Upon a creditor objection, the examiner must establish "good cause," taking into consideration the totality of the circumstances, including the importance of the information to the examiner and the costs and burdens on the creditor. *See Countrywide Home Loans,* 384 B.R. at 393. The level of good cause required to be established varies depending on the potential intrusiveness. *Id., citing Fearn,* 96 B.R. at 138. *See also Official Cmte. Of Unsecured Creditors v. Eagle–Picher Indus., Inc. (In re EaglePicher Indus., Inc.),* 169 B.R. 130, 134 (Bankr.S.D.Ohio 1994)

(examination should not be so broad as to be more disruptive and costly to the party to be examined than beneficial to the party seeking discovery); *Hammond,* 140 B.R. at 201 (similar).

### D. The UST Has Authority to Monitor the Bankruptcy Claims Process

Wells Fargo argues that the UST lacks the authority under § 586 to investigate the proof of claim that it filed and, therefore, no basis exists for the UST to conduct a 2004 examination. Wells Fargo argues that § 586 sets forth the specific and limited tasks which the UST may undertake and that § 307 merely provides the UST with standing to take actions related to those specific tasks. Wells Fargo asserts that investigation of proofs of claim is not one of those specific tasks.

 28 U.S.C. § 586(a)(3) grants the UST broad authority to "supervise the administration of cases and trustees in cases under chapter 7, 11, 12, 13, or 15 of title 11 by, whenever the United States trustee considers it to be appropriate … [.]" This authority includes "monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress[.]" 28 U.S.C. § 586(a)(3)(G). As such, the UST is charged by statute with the duty to oversee and supervise the administration of bankruptcy cases. 28 U.S.C. § 586(a). Congress has summarized the role of the UST as protector of the public interest with the responsibility to ensure that bankruptcy cases are conducted in accordance with the law. *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 500 (6th Cir.1990), *citing* H. Rep. No. 595 at 109, *reprinted in* 1978 U.S.C.C.A.N. at 6070; *United Artists Theatre Co. v. Walton,* 315 F.3d 217, 225 (3rd

Cir.2003); *U.S. Trustee v. Clark (In re Clark)*, 927 F.2d 793, 795 (4th Cir.1991); *In re Plaza de Diego Shopping Center*, 911 F.2d 820, 824 (1st Cir.1990); *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 162 (2nd Cir.2010).

 Further, Congress has expressly given the UST standing under § 307 to raise and be heard on any issue under title 11, except that the UST may not file a chapter 11 plan. 11 U.S.C. § 307; *Revco*, 898 F.2d at 500; *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3rd Cir.1994); *U.S. Trustee v. Fishback (In re Glados, Inc.)*, 83 F.3d 1360, 1361, n. 1 (11th Cir.1996); *In re Donovan Corp.*, 215 F.3d 929, 930 (9th Cir.2000); *Clark*, 927 F.2d at 796; *Plaza de Diego Shopping Center*, 911 F.2d at 824.[6] Because of his role as representative of the public interest, the UST is not required to demonstrate any concrete pecuniary injury to exercise his standing under § 307 of the Code. *Revco*, 898 F.2d

at 500. For example, the Sixth Circuit has held that a United States trustee had standing to appeal a bankruptcy court decision not to appoint an examiner under 1104(b)(2) because the public interest is a sufficient stake to confer standing upon the UST.[7] *Id.*

 Wells Fargo's argument that § 586 circumscribes the UST's authority under § 307 contradicts the express language of § 307. Section 307 specifically provides that "[t]he United States trustee *may raise* and appear and be heard on *any issue in any case or proceeding* under this title...." 11 U.S.C. § 307 (emphasis added). In enacting § 307, Congress did not limit the issues which the United States trustees may raise to those specifically enumerated in § 586. Rather, Congress used very broad, all-inclusive language to authorize the United States trustees to raise any issue in any case or proceeding. In *Countrywide*, after an ex-

---

**6.** Some courts have discussed whether § 307 enlarges or further defines the authority granted to the UST § 586. *See e.g., In re Parsley*, 384 B.R. 138, 147 (Bankr.S.D.Tex. 2008) (it is well within the authority of the UST to investigate the activities of a loan servicer and its local and national counsel); *In re South Beach Securities, Inc.*, 606 F.3d 366, 371 (7th Cir.2010) (finding, among other things, that section 307 gives the United States UST the power to object to a chapter 11 plan of reorganization in his role as guardian of the public interest in bankruptcy proceedings); *In re LWD Inc.*, 342 B.R. 514, 519 (Bankr.W.D.Ky.2006) (the UST is not limited to the duties set out in § 586); and *Zarnel*, 619 F.3d at 161–62. Wells Fargo's argument relies in large part on this debate, wanting this court to conclude that § 586 limits the authority of the UST, while § 307 is merely a standing provision giving the UST authority to act in bankruptcy cases in those areas expressly mentioned in § 586. While the interaction between § 586 and § 307 and the reach of these statutes continues to be debated, this court only finds that under § 586 and § 307 the UST has sufficient authority to conduct a 2004 examination under these circum-

stances. Even if § 586 circumscribes § 307, the court finds that the UST has sufficient authority under § 586 to monitor the progress of cases, including the claims process, and that includes the ability to object to claims and to conduct 2004 examinations. *See In re Borrows*, 2011 WL 721842 at *2 (Bankr. W.D.Wash. Feb. 22, 2011) ("Without deciding whether Section 586 is all inclusive as to the permissible activities of the UST in bankruptcy cases, the Court concludes that subsection (a)(3)(G) of Section 586 provides specific authority for the UST to bring an objection to [a] claim under the circumstances of this case.").

**7.** The United States Supreme Court has long recognized that the pecuniary interest test may not be the only test to confer standing and that noneconomic tests may also confer standing as long as the "interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

tensive review of the history of the UST, including the legislative history behind §§ 586 and 307, case law interpreting the powers granted to the United States trustees under those provisions, and a thorough application of traditional canons of statutory interpretation, the court concluded that:

> Section 307 is written in extremely broad language. Indeed it is difficult to conceive of how section 307 could have been written in any broader language. The court has thus no difficulty concluding that the plain meaning of the power to "raise" and to "appear and be heard" as to any issue in any bankruptcy case or proceeding includes the ability to conduct examinations pursuant to Rule 2004 in the right circumstances.

*Countrywide*, 384 B.R. at 384. The court adopts the thorough analysis performed by the *Countrywide* court in concluding that the UST's authority is not limited to the specific tasks expressly mentioned in § 586 and that the UST may conduct the requested 2004 examination in this case.

■ The claims process, including the filing and allowance of claims, constitutes a significant part of the bankruptcy process. Sections 501 through 511 of the Code directly address the claims process in bankruptcy cases. Other Code provisions cover varying issues relating to the determination, allowance, and treatment of claims.[8]

In addition to these Code provisions, Rules 3001 through 3014 address the claims process and claims issues in bankruptcy cases. Additional Rules cover the diverse issues relating to the determination, allowance, and treatment of claims.[9] Section 586 is broad enough to allow the UST to monitor the claims process, including through the investigation of proofs of claim filed by creditors, to assist in his duty of monitoring the progress of cases. Issues, with proofs of claims filed by mortgage lenders, affect the administration of cases. Accordingly, monitoring the claims process falls well within the UST's duty to monitor the progress of bankruptcy cases.

Other courts have recognized the UST's ability to monitor the claims process in bankruptcy cases and under the broad standing accorded by § 307, to object to proofs of claim. *In re Borrows*, 2011 WL 721842 (Bankr.W.D.Wash. Feb.22, 2011). In *Borrows*, the United States trustee filed an objection to a mortgage lender's proof of claim. The lender, rather than responding to the substance of the objection, challenged the United States trustee's standing to object to claims. *Id.* at *1. The court determined that § 307 provided standing to the United States trustee to object to a proof of claim. In so deciding, it found that § 586(a)(3)(G) provided "specific authority for the UST to bring an objection to claim under the circumstances of this case." *Id.* at *2.[10]

---

**8.** *See e.g.,* § 523 (concerning dischargeability of debts); § 524(c) & (d) (concerning reaffirmation agreements); § 552 (concerning the post-petition effect of prepetition security interests); § 553 (concerning setoffs against claims); § 1111 (deeming proofs of claim or interest in Chapter 11 cases filed for claims or interests scheduled other than as disputed, contingent, or unliquidated and allowing for the "1111(b)" election for secured creditors); and §§ 1122, 1222(a)(3), and 1322(a)(3) (concerning classification and treatment of claims and interests in Chapter 11, 12, and 13 plans).

**9.** *See e.g.,* BR 1007 (concerning the filing of the schedules and other documents at the inception of the case); 2016 (professional compensation and reimbursement of expenses); 3021 (distribution to claims under a plan); 4007 (outlining the procedure for determinations of the dischargeability of debts); and 4008 (outlining the reaffirmation process).

Similarly, in *Countrywide*, the court concluded that the UST had sufficient interest to conduct a 2004 examination in connection with the UST's challenge to Countrywide's manner of calculating proofs of claim because "she has been charged to act as a watchdog to protect the integrity of the bankruptcy system." *Countrywide*, 384 B.R. at 391, *citing Revco*, 898 F.2d at 500 and *Eagle–Pitcher Holdings*, 2005 WL 4030131, at *4 (Bankr.S.D.Ohio Aug. 26, 2005). The UST filed notices of 2004 examinations to obtain information from Countrywide in various bankruptcy cases alleging that the lender had engaged in questionable actions when filing proofs of claims. The UST sought to examine a corporate representative of Countrywide regarding "[its] bankruptcy procedures as they related to the Debtors' financial affairs, the administration of their estate and the impact of Countrywide's bankruptcy procedures on the integrity of the bankruptcy process in the Western District of Pennsylvania." *Countrywide*, 384 B.R. at 400. The subpoena part of the request asked Countrywide to produce a variety of documents. The court rejected many of the same arguments made by Wells Fargo in this case in finding that the UST had the authority to conduct 2004 examinations relating to claims filed by Countrywide.

In addition, *In re Wilson* is instructive because it dealt with the UST's on-going investigation into mortgage lenders' filings in bankruptcy cases. 413 B.R. 330 (Bankr. E.D.La.2009). In that case, the UST did not move for a 2004 examination but merely issued subpoenas to the mortgage lender. The court, finding "no reason to differ from the vast majority of courts on this issue" specifically adopted the reasoning in *Countrywide*, and allowed the UST to propound discovery on a mortgage lender in connection with allegations of improper filings by the lender pursuant to 11 U.S.C. § 307 and § 105(a). *Id.* at 335–36. Noting that even though the UST had not sought discovery pursuant to 2004, "the preferable method for the UST to obtain the information it seeks from the [m]ovants," the court concluded that its decision would have been the same. *Id.* at 336.

Perhaps most apposite to this case is the decision in *In re Michalski*, 449 B.R. 273 (Bankr.N.D.Ohio 2011). Wells Fargo filed a motion to quash a subpoena issued by the UST and requesting the court to reconsider an order granting a 2004 examination. The UST sought to examine records and documentation pertaining to the proof of claim which Wells Fargo filed in the debtors' Chapter 13 case. While limiting the scope of the examination and docu-

---

**10.** Although the obligation to challenge the validity of filed proofs of claim generally falls upon debtors or standing trustees, the overarching duty of the UST is to ensure the proper management of debtors' debts provides them with the requisite standing to review proofs of claims. *See In re Wassenaar*, 268 B.R. 477, 479 (W.D.Va.2001). Wells Fargo argues that the UST cannot interject himself into state law issues as to the validity of proofs of claim. However, in *Wassenaar*, the court rejected this notion, stating: "[t]he question in this case is whether creditors' attorney's fees should be charged as an ad-

ministrative expense to the bankruptcy estate. While this issue focuses on the state-law question of awarding attorney's fees, the federal bankruptcy issue remains. The United States Trustee's interest is plain: to ensure the proper management of Kurt Wassenaar's debts. The Bankruptcy Court, therefore, properly allowed the Trustee to participate in this case." *Id.* at 479. *See also Borrows*, 2011 WL 721842, at *3 (rejecting BAC Home Loans Servicing, L.P.'s argument that granting the UST authority to investigate proofs of claim "impermissibly encroaches on the province of the Chapter 13 trustee to object to proofs of claim.").

ments to be produced, the court otherwise enforced the subpoena and denied the request to reconsider the granting of the 2004 examination. The court relied in large part on the rationale provided by *Countrywide* and *Wilson* and held that the UST had the authority "under Sections 307 and/or 586" to conduct the 2004 examination and to subpoena the documents underlying Wells Fargo's proof of claim. *Id.* at 280.

Finally, another bankruptcy court rejected similar arguments made by BAC Home Loans Servicing, adopting the rationale of *Countrywide*, *Wilson*, and *Michalski*. The court stated: "The UST is charged to serve as a watchdog to protect the integrity of the bankruptcy system. That status compels the conclusion that Congress intended the UST to have the tools, including the ability to conduct Rule 2004 examinations and issue subpoenas, to carry out that duty. Without such authority, the UST's role as a watchdog would be circumscribed and toothless." *In re Youk–See,* 450 B.R. 312, 323 (Bankr. D.Mass.2011).

The cases upon which Wells Fargo relies to argue that the UST's authority under § 586 is very narrow do not alter this court's conclusions. First, Wells Fargo cites *In re Washington Mfg. Co.*, but that decision addressed the issue of whether a UST could intervene in an adversary proceeding under BR 7014, not the power of the UST to move for a 2004 examination. *Citicorp North Amer., Inc. v. Finley (In re Washington Mfg. Co.)* 123 B.R. 272, 275–76 (Bankr.M.D.Tenn.1991). Of even great-

er significance, *Washington Mfg.* was decided prior to the Sixth Circuit's decision in *Revco*.[11]

Accordingly, the court concludes that the UST may be involved in the claims process by virtue of his duty to monitor the progress of bankruptcy cases in his role as the "public watchdog" of the system.

**E. A 2004 Examination is a Tool Which the UST May Use in Exercising His Authority to Monitor the Progress of Bankruptcy Cases, Including the Claims Process**

■ As noted, the UST has the authority under § 586 to monitor the progress of bankruptcy cases and to investigate conduct to determine if a crime has been conducted. Through § 307 Congress made the UST a party in interest to all bankruptcy cases and authorized the UST to appear in any case or proceeding and to raise any issue in any case or proceeding. The 2004 examination is a tool which Congress has given to parties in interest in bankruptcy cases to investigate matters relating to debtors' financial condition, including to determine whether to proceed with litigation. A 2004 examination may be used by the UST to investigate proofs of claim filed in bankruptcy cases provided that the examination is otherwise appropriate under Rule 2004. Accordingly, the court will now address whether the UST's requests in this case meet the requirements of Rule 2004.

---

**11.** Wells Fargo also cites to *In re Gold Standard Baking, Inc.,* 179 B.R. 98 (Bankr.N.D.Ill. 1995) and *In re Howard Ins. Agency, Inc.,* 109 B.R. 445, 446 (Bankr.N.D.Okla.1989). Both cases are distinguishable in that the former dealt with a UST's attempt to impose a new requirement on Chapter 11 debtors-in-possession to imprint their checks with the phrase "Debtor in Possession" and the latter with the power of the UST to promulgate administrative regulations.

## F. The Requirements and Limits of Rule 2004 Examinations Applied to the UST's Request

### 1. Standing: The UST Has Standing To Pursue a Rule 2004 Examination

For the reasons discussed, the UST has standing pursuant to 28 U.S.C. § 586 and § 307 to pursue a 2004 examination.

### 2. Good Cause: The UST Has Established Good Cause for Conducting a 2004 Examination

 Wells Fargo argues that the UST does not have the necessary good cause to conduct a 2004 examination. Wells Fargo explains that "[a] UST is not vested with the power to independently investigate and determine the validity of claims based on state law rights and, in the process, unilaterally increase the required documentation necessary for the filing of a valid proof of claim under Fed. R. Bankr.3001." doc. 27, p. 3. Wells Fargo further argues that "the documents attached to the Wells Fargo claim *already* establish its standing." doc. 27, p. 8. The court disagrees.[12]

Essentially, Wells Fargo's argument is premised upon an erroneous conclusion—that attaching a copy of a promissory note asserted to be the Note executed by the Debtors conclusively establishes that it is the holder of the Note and, therefore, is entitled to enforce the rights under the Note and Mortgage. *See* Objection, pp. 8–

11. The court does not disagree with, and the UST has conceded, the propositions that under Ohio law the holder of a promissory note may enforce the note and that the rights under a mortgage are incidental to the rights under the promissory note which it secures.[13] However, Wells Fargo's argument that attachment of a copy of a promissory note to a proof of claim conclusively establishes Wells Fargo's standing to file the proof of claim is not well taken.

A properly filed proof of claim is only prima facie evidence of the validity of a claim, and the UST is entitled to verify that eligibility by requiring that original documents or other evidence of the claimant's entitlement to file and enforce the claim be produced. 11 U.S.C. § 502(a). Wells Fargo's argument that the UST's request amounts to an attempt to rewrite the rules governing the documentation of proofs of claim misses the point. In seeking to verify Wells Fargo's standing to file a proof of claim, the UST is seeking to ensure that Wells Fargo complies with the Code and the Rules and to verify that Wells Fargo is a creditor entitled to file a proof of claim under § 501 of the Code. While the UST has not yet challenged the validity of Wells Fargo's claim by objecting to it, he is entitled to make preliminary inquiries before determining if an objection is warranted. That inquiry is exactly the purpose of a 2004 examination. As

---

**12.** Another court rejected essentially this same argument made by Wells Fargo in *In re Michalski,* 449 B.R. 273 (Bankr.N.D.Ohio 2011) ("Wells Fargo mistakenly construes the Rule 2004 examination as an attempt by the UST to 'unilaterally increase the requirements for filing a valid proof of claim.' " *Id.* at 280 (internal citations omitted)). Noting that determination of proofs of claim in bankruptcy cases frequently requires analysis of state law, the court found that "[t]his argument totally misses the mark" and that the UST could conduct a Rule 2004 examination to obtain information from Wells Fargo concerning the proof of claim it filed in that case. *Id.*

**13.** Under Ohio law, security follows the note and therefore whoever holds the note also holds any security securing such note. *See Noland v. Wells Fargo Bank, N.A. (In re Williams),* 395 B.R. 33, 47 (Bankr.S.D.Ohio 2008), *citing Gemini Services, Inc. v. Mortgage Electronic Registration Systems, Inc. (In re Gemini Services, Inc.),* 350 B.R. 74, 82 (Bankr.S.D.Ohio 2006).

noted, the UST seeks production of the Note based on the fact that the copy of the Note affixed to Wells Fargo's proof of claim, which Note is endorsed in blank, fails to show Wells Fargo as the holder of the Note. Wells Fargo's ability to provide a copy of the Note does not necessarily equate to it being in possession of the original Note, much less being in its possession at the time it filed its proof of claim. Under these circumstances, the UST may seek to verify Wells Fargo's entitlement to file the proof of claim, including review of the original Note or such other appropriate documentation to convince the UST that Wells Fargo is in possession of the original Note or otherwise was entitled to file the proof of claim.[14] In this regard, the court notes that the Debtors' case is an open Chapter 13 case continuing to be administered by the Chapter 13 Trustee and an objection to the claim could still be made. After conducting its 2004 examination, the UST can decide if it is appropriate to object to Wells Fargo's proof of claim or to take other appropriate action.

Under the standards described, the UST has established good cause to conduct a 2004 examination. The Debtors' case is open and being administered. The UST has questioned the status of Wells Fargo as the legitimate holder of the Note and Mortgage attached to Wells Fargo's proof of claim based on the fact that neither of those documents shows Wells Fargo as the holder. Because the Note was endorsed in blank, the UST seeks production of the original Note by Wells Fargo to evidence Wells Fargo's possession of that Note. As

the recognized "watchdog" of the bankruptcy system, charged with the duties to protect its integrity and to ensure that bankruptcy cases are conducted in accordance with the law, the UST is a party in interest entitled to seek to verify the standing of claimants and their entitlement to payment. Those matters relate to the Debtors' liabilities and financial condition and may affect the administration of their estate and the dividend paid to unsecured creditors in particular. *See* BR 2004(b).

Wells Fargo also suggests that a 2004 examination is inappropriate because no objection to Wells Fargo's proof of claim has been filed, but a contested matter is not required. *See Hammond*, 140 B.R. at 204 (A 2004 examination is appropriate to determine whether a potential plaintiff has grounds under 11 U.S.C. § 523(d) and BR 9011 for filing an action); *In re Johnson*, 2007 Bankr.LEXIS 3022 (Bankr.S.D.Ohio July 23, 2007) (2004 examination is normally a pre-litigation device); *In re Michalski*, 449 B.R. at 281 ("[A] Rule 2004 examination is frequently used as a pre-litigation tool...."); Collier on Bankruptcy, ¶ 2004.01[1]. *See also In re Robinson*, 2011 Bankr.LEXIS 1667 (Bankr.W.D. Tenn. April 6, 2011) (United States trustee has standing to examine the representative of the holder of an allowed secured claim when no objection has been filed with respect to the claim by the Chapter 13 Trustee or anyone else.).

Having decided that good cause exists for the UST to conduct a 2004 examination, the last issue is whether the scope of the UST's request is appropriate.

---

**14.** The most common, but not exclusive way to establish being the "person entitled to enforce" a negotiable instrument, under the Ohio U.C.C., is to be the holder, such as a typical promissory note. *See* Ohio Revised Code § 1303.31 (Person entitled to enforce an instrument). If a promissory note is endorsed in blank, possession of the original note, endorsed in blank, establishes the right to enforce it as the holder and, therefore, standing to file a proof of claim. *Densmore v. Litton Loan Servicing, L.P. (In re Densmore)*, 445 B.R. 307 (Bankr.D.Vt.2011).

### 3. The Scope of the Examination

The UST seeks to examine a Wells Fargo representative at the UST's office in Columbus, Ohio and requests that Wells Fargo produce the following documents:

1. The actual, contemporaneously-kept transactional mortgage loan history on the Debtors' mortgage loan, along with payments for escrow advances made by Wells Fargo Home Mortgage.

2. Evidence of the chain of assignment of the mortgage and chain of endorsement of the note which would tend to support claimant's right to make the within claim in Debtor's bankruptcy case.

Motion, Exhibit A, p. 9.

Wells Fargo argues that the scope of the production of documents is too broad. It explains that it should not have to produce a complete loan history as it is irrelevant to Wells Fargo's standing to file its proof of claim, the only basis asserted by the UST for his request. In that same vein, Wells Fargo adds that an in-person examination is superfluous as the standing issue can be addressed through the production of documents.

Rule 2004(c) provides with respect to examinations that:

Compelling attendance and production of documents. The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending. BR 2004(c).

In Countrywide, the court linked the good cause requirement with the scope of the examination. The court was legitimately concerned with the potential for abuse that could occur if parties were given essentially carte blanche to conduct broad, unlimited investigations resulting in unwarranted expensive burdens on private parties. The court stated:

Countrywide points out that a finding of an unchecked power in the UST to pursue examinations of creditors under Rule 2004 could lead to full-scale "investigations" by the UST that would unfairly intrude into the private business affairs of creditors and chill their participation in the bankruptcy process. That is a legitimate concern which the Court takes seriously. While the UST was undoubtedly intended to be a "watchdog" of the bankruptcy system, that cannot and should not be viewed as providing a license for the UST to engage in potentially invasive and expensive Rule 2004 discovery based on nothing more than her own curiosity. Such a license would be inimical to bedrock principles underlying the relationship between the federal government and the people (intended in the broad sense, including corporations such as Countrywide.)

*Countrywide*, 384 B.R. at 392 [footnote omitted]. In order to guard against overreaching intrusions and examinations, the court applied a sliding scale approach to determine whether the United States trustee had sufficient cause to justify the scope of the examination she sought to conduct. The court continued:

The question of whether the UST has shown sufficient good cause to pursue a Rule 2004 examination and the type of

discovery implicitly allowed by the Rule in a given matter is not suited to application of a mechanical test. Rather, a totality of circumstances approach is required, taking into account all relevant factors. Consistent with this approach it is appropriate to apply the "good cause" standard in what may be termed a "sliding scale" manner or balancing test. That is to say, the level of good cause required to be established by the UST before she can obtain certain documents or pursue a certain line of inquiry in a Rule 2004 examination involving a creditor will vary depending on the potential intrusiveness involved.

*Id.* at 393. While such factors may bear on whether good cause exists for a 2004 examination, these considerations are even more useful in determining the appropriate scope of the examination once a party establishes standing and good cause. The more compelling the cause, the greater latitude the court will allow for the 2004 examination.

█ In this case the UST's cause for the examination is narrow—determining whether Wells Fargo was legally entitled to file the proof of claim. Accordingly, the scope of any examination granted should likewise be narrowly focused. In order to verify Wells Fargo's entitlement to file a proof of claim in this case, the UST is entitled to review the original Note and any such documents that establish Wells Fargo is the holder of the Note under the Ohio Uniform Commercial Code and when Wells Fargo came into possession of the original Note. To the extent that the "contemporaneously-kept transactional mort-

gage loan history on the Debtors' mortgage loan" is intended by the UST to capture documents in Wells Fargo's possession relating to the transfer of the Note or interests in the Note from one entity to another until Wells Fargo became the holder of the Note, the request is granted and Wells Fargo shall produce such documents to the UST.[15] In addition, the request for documents pertaining to "the chain of assignment of the mortgage and chain of endorsement of the note which would tend to support claimant's right to make the within claim in Debtor's bankruptcy case" is granted as those documents are clearly relevant to the UST's inquiry into Wells Fargo's legal basis and standing for filing the proof of claim. However, to the extent that the UST is seeking a loan history relating to the payments made by the Debtors, charges made by the lender on the account, and other debits and credits relating to the loan evidenced by the Note and Mortgage, or any documents other than the original Note and other documents pertaining to the chain of ownership interests in the Note, the UST's request is denied. The UST is not challenging the amount of the claim filed by Wells Fargo or any other issue other than the legal basis for its filing the proof of claim and, therefore, any other such documents would unnecessarily burden Wells Fargo. Any production of documentations authorized in this decision shall occur within forty-five (45) days after entry of the court's order on this decision unless otherwise agreed by the parties.

█ After the documents are produced by Wells Fargo, if the UST determines

---

**15.** It appears that there may be some confusion as to what the UST meant with respect to "transactional loan history." Wells Fargo appears to construe this request as a request for a "complete loan history," or in other words, the history of payments made by the Debtors and charges made by the lender relating to the loan account and perhaps this construction of that request is understandable given the ending phrase of that request—"along with payments for escrow advances made by Wells Fargo Home Mortgage." *See* doc. 27, pp. 8 & 11.

that the documents produced do not establish Wells Fargo as the person entitled to enforce the Note under Ohio law and that it had that status at the time the proof of claim was filed, then at the request of the UST, Wells Fargo shall appear for an oral examination through an appropriate representative designated by Wells Fargo to be examined concerning how Wells Fargo became the holder of the Note. Any such examination shall take place at the office of the UST nearest to the principal place of business of the representative designated by Wells Fargo to be orally examined or at such other location or manner as the parties may agree.[16] To the extent such oral examination is not conducted by consent of the parties, the UST shall comply with the requirements of Rule 2004(c) and (d).

## V. Conclusion

For the foregoing reasons, the court grants in part and denies in part the UST's *Motion for Entry of an Order Authorizing the Examination of and Production of Documents by Wells Fargo Home Mortgage Pursuant to Fed. R. Bankr.P. 2004 and 9016* (doc. 27). The court finds that the UST has the authority to investigate the proof of claim filed by Wells Fargo and has standing to conduct a 2004 examination for that purpose and that the UST has demonstrated good cause to conduct a 2004 examination. However, the examination shall be limited as provided by this decision, with an oral examination to occur only in the event that the documentary production is insufficient to establish Wells Fargo's standing to file the proof of claim. In the event that the UST determines that an oral examination is necessary, the oral examination shall be conducted in accordance with BR 2004(c) and (d) and this decision, unless otherwise agreed upon by the parties.

The court is concurrently entering an order consistent with this decision.

**IT IS SO ORDERED.**

---

**16.** The UST has suggested the possibility of videoconferencing.