IN RE: Lawrence W. STAMBAUGH, Dianna L. Stambaugh, Debtors.

Case No. 09–55198

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Signed May 21, 2015

Alison A. Gill, Westerville, OH, for Debtors.

*ORDER GRANTING IN FULL THE UNITED STATES TRUSTEE'S MOTION AUTHORIZING THE EXAMINATION OF AND REQUIRING THE PRODUCTION OF DOCUMENTS BY OCWEN LOAN SERVICING, LLC, SUBJECT TO THE EXECUTION OF CONFIDENTIALITY AGREEMENTS (DOC. NO. 73)*

Judge Caldwell

On May 1, 2015, the Court conducted a hearing on the above-captioned Motion filed by the United States Trustee ("UST") and an Objection filed by Ocwen Loan Servicing, LLC ("Ocwen"). For reasons expressed below, the Court grants the UST's Motion in full, subject to the execution of confidentiality agreements. A brief summary follows.

On May 8, 2009, Lawrence W. and Dianna L. Stambaugh ("Debtors") filed this case under Chapter 13 of the United States Bankruptcy Code ("Code"). The

original mortgage holder and servicer, GMAC Mortgage, LLC ("GMAC"), filed a proof of claim on May 26, 2009, for $127,840.61. The Court confirmed the Debtors' Plan on July 31, 2009, that provided payments to GMAC of $1,174.00 per month, as the amount contractually due under the mortgage, in addition to the cure of a pre-petition arrearage.

Approximately four years later, on March 7, 2013, GMAC assigned its mortgage and servicing rights to Ocwen. Next, on April 2, 2013, Ocwen filed a Notice of Mortgage Payment Change informing Debtors that their mortgage payment would increase to $1,256.52, due to an escrow shortage of $486.85. Three days later on April 5, 2013, Ocwen filed the requisite Notice of Transfer of the claim formerly held by GMAC.

Nearly eighteen months later, on September 19, 2014, the Debtors filed a Motion for Contempt and Damages for Violation of the Automatic Stay. The Debtors alleged that on May 6, June 2, July 29 and August 28, 2014, Ocwen left collection notices at the Debtors' home. Further, Debtors asserted that the latter collection attempts occurred after their Counsel twice contacted Ocwen. Ocwen never filed a response. Instead, and at its request, the Court granted three answer extensions to allow discussions with Debtors' Counsel and possible settlement. Indeed, the third extension request filed on November 5, 2014, represented that a resolution had been reached, subject to documentation, that would result in the withdrawal of the Contempt Motion. The Debtors filed their withdrawal on December 11, 2014.

In the interim and on November 25, 2014, the UST filed the present Motion seeking authority to issue a subpoena *duces tecum* to produce and allow inspection of five categories of documents, and provide a knowledgeable employee of Ocwen to provide related sworn testimony. The scope of the requested discovery includes:

1. The actual, contemporaneously-kept transactional mortgage loan history on the Debtors' mortgage loan with Ocwen Loan Servicing, LLC.

2. Any and all documentation relating to policy or directives of Ocwen Loan Servicing, LLC, regarding application of Chapter 13 Plan payments to mortgage accounts, including policy or directives directly affecting the Debtors' account. Include pre- and post-petition payment application policy and directives.

3. Any and all documentation relating to policy or directives regarding collection procedures for mortgage accounts that were involved in a Chapter 13 bankruptcy, including policy or directives directly affecting the Debtors' account.

4. Any and all documentation relating to policy, directives and/or procedures regarding auditing mortgage accounts boarded from prior servicers for customers who are in an active bankruptcy.

5. A full and complete copy of the mortgage-servicing contract of Ocwen Loan Servicing, LLC, pursuant to the Debtors' mortgage account.

After receiving three extensions to respond to the UST motion, in hope of reaching a settlement, Ocwen filed its opposition on March 20, 2005. Ocwen counters:

1. It posted the four collection notices on Debtors' home "inadvertently"; it took "immediate" action to ensure no further postings, and reached an accommodation with the Debtors.

2. Without conceding that cause has been established, it agrees to provide all requested discovery (Items 1–3 and 5 above) with the agreement that discovery is limited to policies in place while it serviced the loan

and that directly affect the Debtors' loan.

3. Discovery related to Item 4 above ("Ocwen's bankruptcy policies for auditing Debtors' account boarded from the prior servicer") exceeds the appropriate scope of discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure.

As explained to the Court by the parties, "boarding" refers to the transfer process of mortgage loans among lenders and/or servicers along with relevant information as to their collection status; i.e., whether the loans are in default or subject to bankruptcy court jurisdiction. The underlying concern is that with the frequency and size of mortgage assignments, and to mitigate harm to customers, procedures are necessary to ensure that accurate collection status information follows the loan to the new owner. This process is subject to federal regulation.

Ocwen argues that because the collection notices were not first posted until approximately a year after transfer of the loan from GMAC, the boarding procedures are not relevant and constitute the "... launch of a wholesale investigation of Ocwen's private business affairs ...".

Bankruptcy Rule 2004(b) allows the court to order the examination of any entity relating to "... the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate ...". By definition, Rule 2004 Examinations are broad in scope and are geared to determine whether litigation should be commenced that will then be subject to the more tailored and targeted provisions of the Federal Rules of Civil Procedure. Caution, however, must be exercised to not unleash costly and disruptive procedures that far outweigh the benefit of obtaining the information. *In re*

*Fearn,* 96 B.R. 135, 137–138 (Bankr. S.D.Ohio 1989).

The Court finds and concludes that the UST's request is reasonable, and is not burdensome for the reasons that follow. First, how the Debtors received multiple collection notices from Ocwen, after the transfer of the loan, is relevant to the efficacy of the stay provisions of Section 362 of the Code. The Court is not clear how the passage of time between the date of transfer and the collection attempts should diminish this concern. The stay is the reason debtors file bankruptcy. Second, creditors are obligated to structure internal systems and mechanisms to minimize the opportunity for even inadvertent stay violations that may prompt debtors to spend the time and expense to return to bankruptcy court to protect their rights. See *In re Roush,* 88 B.R. 163, 164–165 (Bankr.S.D.Oh.1988) (discussion of large institutional creditors' obligation to have systems in place to avoid even inadvertent discharge violations).

Third, without discovery of what collection information accompanied the transfer of the Debtors' loan, there is no means to determine why the Debtors received four collection notices, two of which Ocwen posted after contact by Debtors' Counsel. It is reasonable and not burdensome to allow discovery of boarding procedures that were in place at the time of the transfer of the Debtors' loan. Fourth, stay violations are common and systemic problems that involve many debtors and creditors, and are far beyond the reach of settlements in each case, as the need may arise. The UST is in a unique position and is indeed obligated to act in such instances. 28 U.S.C. § 586(a); 11 U.S.C. § 307.

For these reasons, the Motion Authorizing the Examination of and Requiring the Production of Documents by Ocwen ·is

**GRANTED IN FULL,** subject to the execution of confidentiality agreements between the parties.

**IT IS SO ORDERED.**